# Staunton.

## W. B. STANLEY v. VOORHEIS E. TOMLIN,. ADMINISTRATOR.

September 17, 1925.

1. APPEAL AND ERROR—*Conflicting Evidence—Verdict Contrary to the Evidence.*—The Supreme Court of Appeals cannot disturb a verdict, as being contrary to the evidence, where the record disclosed substantial evidence upon which the jury were well warranted in finding their verdict.

2. NEGLIGENCE—*Questions of Law and Fact—General Rule.*—Negligence only becomes a question of law to be taken from the jury when the facts are such that fair-minded men can only draw one inference-therefrom. If fair-minded men, from the proofs submitted, may honestly differ as to the negligence charged, the question is not one of law but of fact to be determined by the jury under proper instructions from the court.

3. NEGLIGENCE—*Automobile Accident—Contributory Negligence—Question for Jury—Case at Bar.*—In the instant case, an action for the death of a child struck by defendant's automobile, plaintiff had stopped his · car and sent his little daughter to open a gate which he intended to enter. Getting out of the car, the child went in front of the car and was crossing the road to open the gate when she was struck by the car of defendant, which was going in the same direction as the car of the plaintiff.

   *Held:* That where the question of contributory negligence was properly submitted to the jury, under proper instructions, and the jury found for the plaintiff, this determined the question on appeal.

4. STATUTES—*Construction—Subject Matter—Object.*—A statute should be · . construed with reference to its subject matter, and the object sought to be obtained, as well as the legislative purpose in enacting it; and its language should receive that construction which will render it harmonious with that purpose rather than that which will defeat it.

5. STREETS AND HIGHWAYS—*Section 2140 of the Code of 1919—Regulation as to Passing Vehicles—Whether Automobile is a Vehicle within the Act.*—Section 2140 of the Code of 1919 provides that "when the operator, conductor or driver of such machine overtakes a horse or vehicle · or motor vehicle traveling in the same direction with himself, he shall slow down his speed, signal for the road by bell, or gong, or·

horn, and if the horse or other vehicle stop, shall pass at a rate of speed not greater than ten miles per hour." In the instant case, an action for the death of a child killed by defendant's automobile when she stepped in the road from her father's car, which had stopped, to open a gate, it was contended that section 2140 did not apply but was only applicable to animal drawn vehicles.

*Held:* That an automobile, motor vehicle, or machine, was embraced in the words "or other vehicle" as used in the statute.

6. AUTOMOBILES—*Whether Automobile Embraced in the Term "Vehicle."*— In reviewing the various Virginia acts regulating automobiles, it is observed that in the titles thereto the legislature adopted the term "vehicle" as the term indicative of all conveyances, save those whose motive power was animal.

7. AUTOMOBILES—*Definition.*—The term "automobile" is defined as the general name which has been adopted for all forms of self propelling vehicles for use on highways and streets for general freight and passenger service; a wheeled vehicle propelled by gasoline, steam, or electricity; a vehicle in common use; an ordinary vehicle of pleasure and business.

8. WORDS AND PHRASES—*Vehicle.*—A vehicle is a means of conveyance and the term has not been restricted to horse drawn carriages, but includes bicycles, motorcycles, automobiles or street cars.

9. STREETS AND HIGHWAYS—*Section 2140 of the Code of 1919—Passing Car which was Going in the Same Direction and Has Stopped—Construction of the Act.*—The provision of section 2140 of the Code of 1919 is a wise one. Its object is to protect, to the fullest extent, not only the occupants of horse drawn vehicle s, but the occupants of any other vehicle which stops in plain view of the driver of an oncoming automobile. The statute has no application to what is generally termed "a parked car," that is, a car left by the roadside for an indefinite period of time, but it does apply to "a stopped car," that is, one that either is stopped in plain view for the purpose of permitting the driver of a car, who has signalled for the road, to pass, or that has stopped for any other purpose.

10. STREETS AND HIGHWAYS—*Automobiles—Passing Stopped Car.*—The fact that a car stops in plain view of a driver of a car should put the driver thereof upon notice that he should proceed with caution.

11. STREETS AND HIGHWAYS—*Automobiles—Passing Other Car.*—The Virginia statutes draw a distinction between passing a moving car and passing a car which has stopped. In section 2138, Code of 1919, it is provided that when the operator of a machine overtakes any moving vehicle or machine, he may pass the same at a rate of speed not in excess of twenty-five miles per hour. Unless the roadway is very narrow, there is little or no danger in passing a moving car. On the other hand, to dash by a stopped car, at a rate of speed in excess of the speed specified in the statute (Section 2140 of the Code of 1919) is *per se* negligence.

12. STREETS AND HIGHWAYS—*Automobiles—Passing Other Car—Instructions—Case at Bar.*—In the instant case, an action for the death of a child, the court instructed that the law of Virginia required one operating an automobile, when passing a car going in the same direction in front of it and which latter car stops in sight of the car behind, to reduce its speed and to pass said car at a rate of speed not exceeding ten miles an hour, and to give signals of its approach, and to drive with ordinary care as to keeping an outlook, giving ample roadway in passing said car, with the car under thorough and careful control, and to drive with due and proper regard for the protection of life on said highway, and that any violation of these regulations, if proven, is competent evidence. There was positive proof in the record that defendant, if not guilty of reckless driving as to outlook, signals and speed, was far from exercising the prudence of the ordinarily careful man who regards the rights of others.

*Held:* That, in any view of the instruction, the jury could not have been misled.

13. CONTRIBUTORY NEGLIGENCE—*Children—Girl of Nine—Case at Bar.*—In the instant case, an action for the death of a child of nine struck by a passing automobile, plaintiff testified that his daughter was nine years old, and attended school "some, not much," and was of ordinary intelligence for a child of nine.

*Held:* That this evidence did not amount to a rebuttal of the legal presumption that the child was not capable of exercising care and prudence, and was not sufficient to form the basis of an instruction that the jury must determine, under all the circumstances of the case, whether plaintiff's intestate was guilty of contributory negligence.

14. IMPUTABLE NEGLIGENCE—*Parent and Child.*—The contributory negligence of the father of a child of nine cannot be imputed to the child.

15. APPEAL AND ERROR—*One Fair Trial—Appellate Court not to Seek Error.*—When the appellate court is satisfied that a case has been fairly disposed of on the merits, it should not seek to discover error, where the error, if discovered, would not affect the very right of the case.

Error to a judgment of the Circuit Court of Bedford county in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Fred Harper*, for the plaintiff in error.

*Wm. Kinckle Allen*, for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

This action was brought by the administrator of the estate of Bernice V. Tomlin to recover damages for the death of plaintiff's intestate, alleged to have been caused by the negligence of the defendant.

There was a trial by a jury which resulted in a verdict for the plaintiff in the sum of $6,500. The court refused to set aside the verdict and entered judgment for the plaintiff, and it is this judgment we are now asked to review.

The facts in the case, as proven by the plaintiff, are as follows:

On the 30th day of September, 1923, the plaintiff's decedent, Bernice V. Tomlin, an infant nine years of age, was being driven by her father, the plaintiff, in an automobile along the highway in the county of Bedford. When the car driven by the plaintiff reached a point in the road sixty yards distant from a gateway leading into the premises of one John H. Hudson (the home of Hudson being the ultimate destination of plaintiff) plaintiff began to slow down the speed of his car gradually and extended his left hand and arm as a signal of warning that the car was going to be stopped, and also, before reaching the gate entrance, plaintiff drove his car to the extreme right-hand side of the road so that he could safely turn into the gateway on the left-hand side of the road. As he brought his car to a complete stop, he continued to give the warning signals of such intention.

At the point of entrance to the Hudson property, the roadway is thirty-five feet wide. After stopping his car, plaintiff looked to the front and rear for any approaching cars; none being in sight, he told his little daughter to get out of the car and open the gate. Getting out of the car on the right-hand side, she went to the front of the car and was in process of crossing the road to open the gate when she was struck by the car of the defendant, which was going in the same direction as the car of the plaintiff. As a result of the injuries sustained, she died several hours afterwards.

The declaration contains four counts, and seeks a recovery upon the grounds: (1) That the defendant at the time of the accident was running his car at an excessive and illegal rate of speed; (2) that he failed to maintain a proper lookout and to give proper signals of his approach; (3) that the defendant was not driving his car with ordinary care and with proper regard to the width, traffic and use of the highway; (4) that the defendant was negligent in passing the car of plaintiff at a rate of speed exceeding ten miles an hour.

Three grounds of defense are relied upon by the defendant: (1) That he was not guilty of any negligence as alleged in the declaration; (2) that the said Bernice V. Tomlin, the plaintiff's intestate, was guilty of contributory negligence; (3) that the plaintiff, V. E. Tomlin, administrator, was guilty of negligence which contributed to the accident.

There were a number of eye-witnesses to the accident, and there is a direct conflict in the testimony as to the action of the plaintiff in stopping his car, the rate of speed of the car of defendant, and as to the movements of Bernice Tomlin as she proceeded to cross the road in front of the car.

[1, 2] On the question of the conflict of evidence,. the jury have found in favor of the plaintiff, and in conformity with a long established precedent, the appellate court cannot disturb the verdict as being contrary to the evidence, as the record discloses substantial evidence upon which the jury were well warranted in finding a verdict for the plaintiff. The rule as to contributory negligence is stated in *City of Norfolk* v. *Anthony*, 117 Va. 777, 86 S. E. 68, to be this: "Negligence only becomes a question of law to be taken from the jury when the facts are such that fair-minded men can only draw one inference therefrom. If fair-minded men, from the proofs submitted, may honestly differ as to the negligence charged, the question is not one of law but of fact to be determined by the jury under proper instructions from the court."

[3] In the instant case, the question of contributory negligence was properly submitted to the jury, under proper instructions from the court, and the jury, as the triers of the facts, have ascertained them to be as testified to by the plaintiff and his witnesses. As this court must take the facts as found by the jury to be true, it necessarily follows that the assignment of error, based on the contention that the verdict of the jury should have been set aside because of the contributory negligence of the plaintiff and his intestate,. must be overruled.

[4, 5] The next assignment of error relates to the action of the court in giving, at the instance of the plaintiff, over the objection of the defendant, the following instruction:

"The court instructs the jury that the laws of Virginia, requiring one operating an automobile, when passing a car going in the same direction in front of it. and which latter car stops in sight of the car behind,.

to reduce its speed and to pass said car at a rate of speed not exceeding ten miles an hour, and to give signals of its approach, and to drive with ordinary care as to keeping an outlook, giving ample roadway in passing said car, with the car under thorough and careful control, and to drive with due and proper regard for the protection of life on the said highway, are regulations intended for the protection of travelers and any violation of said regulations, if proven, is competent evidence of negligence in this action to be considered along with all other evidence in this case in determining whether the defendant, as charged in any one of the four counts of the declaration, was guilty of negligence which caused the decedent, Bernice E. Tomlin, to have inflicted upon her the injuries which caused her death as therein alleged, and if the jury believe from a preponderance of the evidence that the Tomlin car did stop in view of the defendant, or where the defendant could have seen it stop in front of him if he had been looking, and that defendant continued to drive his car after decedent's car stopped and passed the said latter car at a rate of speed in excess of ten miles an hour, and was so driving his car when he struck the said decedent (or if the jury so believe that the defendant violated any of the other foregoing regulations while driving his car along said highway just before and at the time he struck said decedent), and that the violation of the said regulation, or regulations, was a direct and proximate cause of the said striking, and that the said striking by the defendant's car resulted in the death of the decedent, without which the tragedy would not have occurred, then they must find a verdict for the plaintiff not in excess of ten thousand dollars ($10,000.00)."

This instruction is obviously based upon section 2140 of the Code, which is as follows:

"2140. Duties of driver, etc., as regards vehicles drawn by horses, etc., when driving in same direction.— When the operator, conductor or driver of such machine overtakes a horse or vehicle or motor vehicle traveling in the same direction with himself, he shall slow down his speed, signal for the road by bell, or gong, or horn, and if the horse or other vehicle stop, shall pass at a rate of speed not greater than ten miles per hour. Should such vehicle or ridden horse not stop, and the said operator, driver or conductor of said machine desire to pass, he shall do so at a rate of speed not. greater than may be necessary, and shall in all cases use due diligence and care not to frighten the horse or horses. In case of a machine passing a horse or vehicle going in the same direction, the provision of section 2139 shall apply to the operator, driver or conductor of the machine except that in such cases the horse or horses shall be held until the horse or horses become quiet and then the machine may proceed."

The question presented by this assignment of error is one of first impression. With the advent of the automobile came legislation regulating its operations upon the highways of the State. The first general act of the legislature dealing with the subject of motor vehicles is found in the Acts of 1902-3-4, page 34. The act was framed to protect the public in general against the automobile, which, by many people, was considered a dangerous instrumentality. Especially was this legislation directed toward the protection of people riding upon horses, or in horsedrawn vehicles. As the automobile increased in usage, the General Assembly, at its sessions of 1906 (laws 1906, c. 299), 1910 (laws 1910, c. 326), 1916 (laws 1916, c. 522), and 1922 (laws 1922, cc. 234, 407, 430), enlarged the scope of legislation in regard thereto, so as to cover its

operation, not only in regard to pedestrians and horse drawn vehicles, but also in regard to the attitude of one driver of a car towards another driver of a car.

It is contended by the defendant that section 2140, *supra*, does not apply to the instant case, but is only applicable to animal drawn vehicles. The criticism is also urged that "this instruction, in effect, tells the jury that if the defendant, Stanley, passed the car of the plaintiff at a rate of speed in excess of ten miles per hour, he was guilty of negligence, even though they might believe that his operation of his car, at any greater rate of speed, was in all other respects in the exercise of proper and reasonable care."

In disposing of the question as to whether an automobile, motor vehicle, or machine is embraced in the words "or other vehicle" as used in the statute, it is essential that the statute be construed "with reference to its subject matter, and the object sought to be obtained, as well as the legislative purpose in enacting it; and its language should receive that construction which will render it harmonious with that purpose rather than that which will defeat it." *Mapp* v. *Holland*, 138 Va. 519, 122 S. E. 430, 37 A. L. R. 478.

[6] In reviewing the various acts regulating automobiles, it is observed that in the titles thereto the legislature adopted the term "vehicle" as the term indicative of all conveyances, save those whose motive power was animal.

[7] In 6 C. J., p. 867, an automobile is defined as follows: "The general name which has been adopted by proper approval for all forms of self-propelling vehicles for use on highways and streets for general freight and passenger service; a wheeled vehicle propelled by gasoline, steam, or electricity  * * *  ; a vehicle in common use  * * *  ;   an ordinary vehicle of pleasure and business  * * * ."

In Huddy on Automobiles, section 294, it is stated: "Statutes enacted before the popular use of motor vehicles, prescribing the turns to be made by 'vehicles' or 'teams' are construed as applying to automobiles."

[8] In *Foster* v. *Curtis*, 213 Mass. 79, 99 N. E. 961, 42 L. R. A. (N. S.) 1188, Ann. Cas. 1913 E, 1116, it is said: "A vehicle is a means of conveyance and the term has not been restricted to horse drawn carriages, but includes bicycles, motorcycles, automobiles or street cars."

It is the view of the defendant that had the legislature intended that an automobile should be limited to a speed of ten miles in passing another automobile which had stopped, it would have, in section 2140, repeated the words "motor vehicle," and provided, "if the horse or vehicle or motor vehicle stop   *   * ."

[9] We cannot assent to this view. The statute is a wise one. Its object is to protect, to the fullest extent, not only the occupants of horse drawn vehicles, but the occupants of any other vehicle which stops in plain view of the driver of an oncoming automobile. The statute has no application to what is generally termed "a parked car," that is, a car left by the roadside for an indefinite period of time, but it does apply to "a stopped car," that is, one that either is stopped in plain view for the purpose of permitting the driver of a car, who has signalled for the road, to pass, or that has stopped for any other purpose.

It is a matter of common knowledge that children are conveyed in automobiles. Is the statute then to be restricted to the protection of animals and the occupants of animal drawn vehicles, and all protection denied to the occupants of motor propelled vehicles?

[10] The fact that a car stops in plain view of a driver of a car should put the driver thereof upon notice that he should proceed with caution.

[11] Our statutes draw a distinction between passing a moving car and passing a car which has stopped. In section 2138 it is provided that when the operator of a machine overtakes any moving vehicle or machine, he may pass the same at a rate of speed not in excess of twenty-five miles per hour. Unless the roadway is very narrow, there is little or no danger in passing a moving car. On the other hand, to dash by a stopped car, at a rate of speed in excess of the speed specified in the statute, is *per se* negligence.

[12] In any view of the instruction which may be taken, we do not think the jury could have been misled by the giving of the same. The record bristles with positive proof that the defendant, if not guilty of reckless driving as to outlook, signals and speed, was far from exercising the prudence of the ordinarily careful man who regards the rights of others.

Instructions far more favorable to the defendant than he was entitled to were given to the jury.

Instruction "C" is as follows: "The court instructs the jury that even though they believe from the evidence that the defendant, Stanley, was guilty of negligence in the operation of his automobile, at the time and place of the injury complained of, yet if they further believe from the evidence that the plaintiff, the father of the decedent, in whose care and charge the decedent then was, or the decedent, either one were negligent, and that such negligence of the plaintiff or of the decedent contributed to the accident, and that, but for such negligence of the plaintiff, or of the intestate, the accident would not have happened, they must find for the defendant.

Instruction "D," offered by defendant, told the jury that while children between the ages of seven and fourteen years are generally presumed to be less

capable of exercising the care and prudence of adults, yet the jury must determine, under all the circumstances of the case, such as her age, intelligence, and opportunity of warning and notice, whether the plaintiff's intestate was guilty of contributory negligence.

[13, 14] The only evidence upon which to base this instruction was brought to light in the cross-examination of the plaintiff, who stated that his daughter was nine years of age, had attended school "some, not much," and was of ordinary intelligence for a child of nine years of age. We do not think this evidence amounted to a rebuttal of the legal presumption that she was not capable of exercising care and prudence. Unless the proof established the fact that the infant was guilty of contributory negligence, of course the contributory negligence of the father, if any, could not be imputed to the child.

In *Williams' Adm'r* v. *Lynchburg Traction & Light Co.*, 142 Va. 425, 128 S. E. 732, the court refused to give, on motion of the plaintiff, the following instruction: "The court instructs the jury that if they believe from the evidence that the deceased, Augusta B. Williams, was an infant between three and four years of age at the time of her death, the law conclusively presumes that she was incapable of contributory negligence.

"And the jury is further instructed that although they may believe from the evidence that her father, John L. Williams, or her brother, John S. Williams, with whom she occupied the automobile at the time of her death, either or both, were guilty of negligence which contributed to her death, such negligence on their part cannot bar recovery by the plaintiff against the defendant company, in this case, if he is otherwise entitled to recover.

"Therefore, if the jury shall believe from the evidence that the motorman of defendant's street car was guilty of the negligence charged, either in failing to keep a proper lookout ahead as he approached said crossing, or in failing to keep his street car at a reasonable rate of speed and under reasonable control at that point, and that such negligence on his part caused or proximately contributed to the collision with the automobile in which she was riding and thereby caused her death, then they should find for the plaintiff, notwithstanding they may also believe that the said John L. Williams and John S. Williams, or either, with whom she was riding, were also guilty of negligence.

"If, however, the jury shall find that the said motorman was not guilty of negligence which caused or proximately contributed to said collision and her consequent death, then they should find for the defendant."

In holding that the trial court erred in refusing to give the instruction, Prentis, P., said: "The vital issue in this case is not the contributory negligence of the child's father as the driver of the car. The issue is whether or not there was actionable negligence of the agents of the defendant company which was the proximate cause of the injury. Of course, in order to determine that proximate cause, the conduct of the driver of the automobile and his alleged negligence must be fully presented to the jury and carefully considered by them, and this for the purpose of determining whether his conduct should be held the sole proximate cause of the injury. If it was such proximate cause, the action lies against him alone, and there can be no recovery against the company. If, however, both were negligent and the negligence of both, operating together, was the proximate cause of the injury, then the plaintiff has a right of action against either or both."

The remaining assignments of error relate to the giving and refusing of instructions. In view of our conclusion as to the correctness of instruction number one, *supra*, we are of the opinion that the action of the trial court, in regard to the other instructions complained of, is without error.

No complaint is made as to the amount awarded the plaintiff, nor is it seriously contended that the verdict is without evidence to support it. This being the true status of the case, it must be conceded that the parties litigant have had their rights fairly determined by an impartial jury.

[15] When the appellate court is satisfied that a case has been fairly disposed of on the merits, it should not seek to discover error, where the error, if discovered, would not affect the very right of the case..

The judgment of the circuit court will be affirmed.

*Affirmed.*