Hillsborough, } No. 3745.
July 6, 1948.

AMERICAN MUTUAL LIABILITY INS. CO.

*v.*

HECTOR F. CHAPUT & a.

*Alvin A. Lucier* (by brief and orally), for the plaintiff.

*Frederick W. Branch* and *Paul E. Nourie* (*Mr. Branch* orally), for the defendant Kenney.

*Myer Saidel* and *Conrad Danais* for the defendant Gagnon.

*Sheehan, Phinney & Bass*, for the defendant Chaput, furnished no brief.

DUNCAN, J. The endorsement upon which the defendants rely to establish the plaintiff's obligations with respect to the pending law actions was issued to permit the defendant Chaput to furnish proof of financial responsibility under R. L., c. 122, s. 5, and so to avoid suspension of his license to operate motor vehicles. By this endorsement the plaintiff undertook to afford to Chaput "with respect to the use of any other automobile . . . such insurance as is afforded by the policy . . . with respect to any automobile owned by the named insured," Anita Savoie. The policy is expressly stated to be a motor vehicle liability policy as defined in the financial responsibility act. It follows that like insurance was intended to be afforded to the defendant Chaput. Consequently if the "loading device" involved in the accident was an "automobile" within the meaning of the policy, or a "motor vehicle" within the meaning of the act, he is entitled to judgment.

The word automobile in its popular sense connotes a "pleasure vehicle" designed for the transportation of persons on highways. "Motor vehicle," more often used as a generic term, has a somewhat broader meaning, and is commonly applied to any form of self-propelled vehicle suitable for use on a street or roadway. Blashfield, Cyclopedia of Automobile Law and Practice, s. 2. See *Deardorff* v. *Continental Life Ins. Co.*, 301 Pa. St. 179; *Salo* v. *North American Accident Ins. Co.*, 257 Mass. 303, 305. The word automobile is also used as closely synonymous. Webster's International Dictionary. See also, 5 Am. Jur. 517; 4 Words & Phrases 855; 42 C. J. 609; Blashfield, *supra.*

The vehicle involved in these proceedings was originally a tractor. Its essential characteristics were not changed by the addition of equipment which permitted it to be used as a shovel or loader. It was still capable of the use for which it was originally designed and used: the drawing or hauling of loads or vehicles. It was registered

as a tractor, and if not used primarily for transportation over the highways, it was "suitable for use" thereon, and there used as occasion arose. Unless some provision of the policy or of statute requires that the usual meaning of "automobile" or "motor vehicle" be restricted, a decree that there is coverage is required.

The only definition of the word found in the policy provides: "Except where stated to the contrary, the word automobile wherever used in this policy shall mean the motor vehicle, trailer, or semi-trailer described in this policy." It is obvious that this definition cannot be applied to the agreement in the endorsement, but it serves to indicate the substantial equivalence of "automobile" and "motor vehicle."

The language of the endorsement "any other automobile," is in contrast with that of a comparable provision of the policy, apparently superseded by the endorsement. That provision relates to the operaion of "any other private passenger automobile." The endorsement was plainly intended to provide coverage of wider scope than the basic policy.

The financial responsibility act is part of Title XI of the Revised Laws pertaining to "motor vehicles." The first chapter under this title contains definitions to be given to terms used in the title "unless a different meaning is clearly apparent from the language or context, or is otherwise inconsistent with the manifest intention of the legislature." R. L., c. 115, s. 1. A "vehicle" is there defined as "any mechanical device suitable for use on highways, except those propelled or drawn by human power or those used exclusively upon stationary tracks" (XXXIII), and a "motor vehicle" as "any self-propelled vehicle not operated exclusively upon stationary tracks, except tractors." (XVI).

The exception of tractors from the definition of motor vehicles, which first came into the statutes in 1921, is obviously arbitrary. "If it had not been supposed that they were [motor] 'vehicles,' there would have been no reason for excepting them from the statutory definition." *Emerson Co.* v. *Pearson*, 74 N. H. 22, 24. With respect to legislation simultaneously adopted, the Legislature's intent as to tractors was plain. They were not to be subject to requirements then imposed upon motor vehicles generally. Laws 1921, *c.* 119. Since 1921, types and uses of vehicles have changed, and statutory requirements from time to time have been altered. The financial responsibility act originated in 1927, and has since been amended. Its history discloses no legislative intention that its application should depend upon interpretation of statutory definitions not

contained in the act, or that it should be fettered by independent restrictions.

The contentions of the parties in this case illustrate the uncertainties which incorporation of the definitions would have produced. Counsel for the defendant Kenney suggest that the exception of tractors from the definition of motor vehicles does not apply to Gagnon's "loader" because tractors are defined in the statute as " 'vehicles' having no provision for carrying a load." (XXX). The plaintiff asserts that it falls within the statutory definition of "highway building equipment," although this definition relates to "power shovels . . . and tractors while being used in connection with the building, repair and maintenance of highways . . . or moved over the highways under a permit . . . " (XI), and there is no evidence that the tractor in question was being so used, or moved.

In our opinion the statutory definitions of chapter 115 are not applicable, because the term "motor vehicles" as used in the financial responsibility act was not intended in any restricted sense. The purpose of the act was to protect the public in cases of accidents involving not only motor vehicles, but also trailers and semi-trailers. R. L., c. 122, s. 9. The term "motor vehicle" was used in an inclusive sense. There is no evidence in the act of an intent to except tractors suitable for use on highways, and such an exception would be inconsistent with the intent manifested. Cf. *Peterson* v. *King County*, 199 Wash 106; *State* v. *West*, 61 Oh. App. 382. Tractors may not now be operated upon the ways of this state without registration (R. L., c. 116, s. 9), or without a license (R. L., c. 117, s. 9), or without front and rear lights at night. R. L., c. 119, ss. 7a, 8. We see no reason to believe that when privileged to operate upon the highways, they were intended to be exempt from the requirements of the financial responsibility act.

Since the endorsement was provided to permit compliance with the act, the word "automobile" must be construed to have a meaning at least as broad as the term "motor vehicle" as used in the act. We think the tractor in question comes within the meaning of that term as there used, and hence within the meaning of the word "automobile" as used in the endorsement.

The accident occurred upon private property. We do not consider that the result is thereby affected. The coverage provided by the policy does not purport to be limited to accidents occurring upon the public highways or resulting from their use. Application of the financial responsibility act is not by its terms restricted to such

accidents. In this respect it differs from the compulsory act of Massachusetts. See *Phillips* v. *Stone*, 297 Mass. 341; *Terrasi* v. *Peirce*, 304 Mass. 409. While the requirements of our act are viewed as terms or conditions imposed upon the privilege of using the highways (*Rosenblum* v. *Griffin*, 89 N. H. 314), it does not follow that the conditions imposed must relate solely to accidents occurring upon the highways used under the privilege. *Continental Ins. Co.* v. *Charest*, 91 N. H. 378, 381; *Opinon of the Justices*, 94 N. H. 501, 503.

Since the plaintiff's undertaking, in consistence with the act is unrestricted as to the place of the accident, the plaintiff is obligated to defend the action brought against the defendant Chaput, and to satisfy within the limits of the policy any judgment against him. There has been no suggestion that the defendant Gagnon is not "legally responsible" for Chaput's conduct, and the plaintiff's obligation is accordingly held to extend to the action against Gagnon.

*Judgment for the defendants.*

BRANCH, C. J., did not sit: the others concurred.