Charles Wayne BROWN, Plaintiff,

v.

SECURITY FIRE AND INDEMNITY COMPANY, Original Defendant and Third-Party Plaintiff,

v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY, Third-Party Defendant.

Civ. A. No. 64–C–94–R.

United States District Court
W. D. Virginia,
Roanoke Division.

Aug. 2, 1965.

Nathan B. Hutcherson, Jr., Hutcherson & Greer, Rocky Mount, Va., for plaintiff.

B. A. Davis, III, Davis, Davis & Davis, Rocky Mount, Va., for Security Fire and Indemnity Co.

William B. Poff, Woods, Rogers, Muse & Walker, Roanoke, Va., for Government Employees Ins. Co.

DALTON, Chief Judge.

On June 5, 1964, the Circuit Court of Franklin County, Virginia entered a judgment in favor of the plaintiff in this case, Charles Wayne Brown, against Clarence Perdue and Morton Preston in the amount of $16,500, plus costs, which judgment bears interest at six percent per annum from the date of the order.

The judgment was obtained for damages sustained by the plaintiff as a result of a collision, which occurred on State Route 646 in Franklin County on September 16, 1963, between an automobile then being operated by Brown and a motor vehicle operated by Morton Preston who was acting as a servant of Clarence Perdue.

This action has been brought to determine which, if either, of two insurance companies will be liable to pay this judgment obtained by plaintiff.

At the time of the accident plaintiff was operating his wife's 1955 Ford automobile with her permission. Preston was operating a "logging rig" or "sawmill truck" which had been constructed by Perdue from a 1943 Chevrolet truck, and which was intended to be used primarily off public roads for the purpose of pulling cut timber out of the woods by means of a winch and cable which had been attached to the vehicle.

On September 16, 1963, at about 4:30 p. m., Perdue discovered that the left rear tire of his 1953 Chevrolet, which he used for transportation to and from his sawmill, had gone flat, and Morton Preston offered to use the sawmill truck to take the tire to a service station. It was en route to the service station that the accident occurred.

At the time of the accident, Security Fire and Indemnity Company (hereafter referred to as "Security") had in force and effect a standard automobile liability policy covering Alise Holland Brown, plaintiff's wife, and any person operating the 1955 Ford with her permission. The policy also provided coverage against uninsured motorists as required by the law of the State of Virginia. Therefore, Security will be liable to Brown if the logging rig is found to be an uninsured vehicle, as he has fully complied with the provisions of the uninsured motorist laws of Virginia and especially section 38.1–381 of the 1950 Code, as amended, by instituting proceedings against Morton Preston and Clarence Perdue and having process served on Security.

Security did not defend the suit in the Circuit Court of Franklin County, Virginia, and has filed a third-party complaint in this proceeding, alleging that the logging rig is covered by a policy which had been issued to Perdue by Government Employees Insurance Company (hereafter referred to as "Government Employees").

At the time of the accident, Government Employees had in force a valid assigned risk insurance policy which specifically covered Clarence Perdue's 1960 Pontiac and 1955 Chevrolet (which he no longer owns). The logging rig was not mentioned in the policy, but division IV of the Insuring Agreement provided:

IV (a) Automobile. Except with respect to division 2 of coverage C and except where stated to the contrary, the word "automobile" means:

\* \* \* \* \* \*

(4) Newly Acquired Automobile —an automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household, if (i) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and (ii) the named insured or such spouse notified the company within thirty days following such delivery date; but such notice is not required under coverages A, B, and division 1 of coverage C if the newly acquired automobile replaces an owned automobile covered by this policy.

\* \* \* \* \* \*

It has been stipulated that neither Government Employees nor any of its agents, servants, or employees was ever informed that Perdue had acquired the logging rig in question until November 22, 1963, two months and one week after the accident occurred, and three months, or ninety days, after Perdue had acquired the same. Perdue explains this by saying that he did not think this vehicle would be covered by his then existing policy with Government Employees. It has been further stipulated that the rig was acquired on August 7, 1963, and so the accident in question occurred within thirty days of the date of acquisition, or within the notice period specified in the provision relating to a newly acquired automobile.

The Perdue logging rig was not registered in Virginia as an automobile or motor vehicle in the name of Perdue, it was not licensed by the Commonwealth of Virginia, and no certificate of title had been obtained by Perdue on the date of his purchase of the Chevrolet truck.

Government Employees did, by counsel, file an answer on behalf of Morton Preston and Clarence Perdue, but was permitted by the Court to withdraw as counsel after the answer was filed.

In seeking to absolve itself of liability in this case, Government Employees makes several contentions:

(1) that the logging rig was not an automobile within the legal concept of that term or within the provision of its policy issued to Perdue;

(2) that the logging rig in question was not an "owned automobile" within the meaning of Virginia law or the policy;

(3) that Perdue voided his coverage by failing to notify Government Employees "as soon as practicable" of the accident;

(4) that Perdue voided his coverage by failing to notify Government Employees within thirty days of the acquisition of the rig.

These contentions will be considered separately by this Court.

██ (1) *Was the logging rig an automobile within the legal concept of that term and within the provisions of the policy issued to Perdue?*

First, it should be noted that there is no general statutory definition of "automobile" in Virginia, as all of the Code sections which do define the word begin

with "For the purposes of this article * * *" or with other language to that effect. Here, of course, we are concerned solely with construing the terms of an insurance policy with respect to possible liability coverage.

Two automobiles were described in the Government Employees policy—a 1960 Pontiac and a 1955 Chevrolet. It is manifest that the policy was intended to cover more than just the automobiles described therein, however, since described automobiles are placed in a separate category to distinguish them from other automobiles which might be covered. See Insuring Agreement IV(a) (1) —"Described Automobile." For language clearly demonstrating that the word "automobile" is broader than "described automobile" note the first paragraph of the policy under Insuring Agreements:

> This policy applies only to accidents which occur and to direct and accidental losses to the automobile which are sustained during the policy period, while the automobile is within the United States of America, its territories or possessions, or Canada, or is being transported between ports thereof and, *if* a "described automobile" under Insuring Agreement IV, is owned, maintained and used for the purposes stated as applicable thereto in the declarations. (Emphasis supplied)

Note also Insuring Agreement IV(a) (4) which provides, in the last paragraph, that

> Under division 2 of Coverage C, the word "automobile" means a land motor vehicle or trailer not operated on rails or crawler-treads, but does not mean: (1) a farm type tractor or other equipment designed for use principally off public roads, except while actually upon public roads, or (2) a land motor vehicle or trailer while located for use as a residence or premises and not as a vehicle.

Obviously, then, the word "automobile" has different meanings depending on where it is used in the policy. In most instances, the exact scope of the term is not clearly defined.

Counsel for Government Employees predicates his argument that this is not an automobile within the meaning of the policy on the part of Insuring Agreement IV(a) (4) just quoted. Counsel says that this is a specific "definition of equipment" which precludes coverage of the rig, reasoning that liability attaches under this policy only as to medical payments (and since this is an assigned risk policy, there was no medical payments coverage). Unless the Court is completely misinterpreting the language quoted, it appears that counsel has stated his proposition just backwards. Coverage A, relating to bodily injury liability, and not Coverage C, is what we are concerned with here. Even if this were not so, the clause contains the limitation "except while actually upon public roads * * *" There is no dispute that the logging rig was actually on a public road when the accident occurred.

Defining the word "automobile" is not as simple as might appear on first blush, and since the policy in question is certainly ambiguous as to just what type of vehicle constitutes an "automobile" within its terms, the Court is tempted to invoke the universally accepted maxim of insurance law that ambiguous terms in a policy are to be construed most strongly against the insurer. Bowles v. Mutual Ben. Health & Acc. Ass'n, 99 F.2d 44, 119 A.L.R. 756 (4th Cir. 1938); Central Sur. and Ins. Corp. v. Elder, 204 Va. 192, 129 S.E.2d 651 (1963); Harleysville Mut. Ins. Co. v. Dollins, 201 Va. 73, 109 S.E.2d 405 (1959). However, even without the aid of this pull of construction, Perdue's logging rig would fall within the legal concept of the term "automobile" and the Court will hold that a vehicle thus qualifying as an automobile will also come within the scope of that term as used in the policy issued by Government Employees.

The only Virginia case which has actually undertaken to define the word au-

tomobile is Stanley v. Tomlin, 143 Va. 187, 129 S.E. 379 (1925). In that case, the Supreme Court of Appeals, quoting directly from 6 C.J. 867, said that "automobile" was

"The general name which has been adopted by proper approval for all forms of self-propelling vehicles for use on highways and streets for general freight and passenger service; a wheeled vehicle propelled by gasoline, steam, or electricity; * * * a vehicle in common use; * * * an ordinary vehicle of pleasure and business." (143 Va. at 195, 129 S.E. 379)

Even this definition is ambiguous in that it is not clear whether an automobile must be a vehicle which is intended for use on highways and streets. Although the unlicensed sawmill truck in this case could, in certain instances, be driven on the highways of Virginia, it was unquestionably designed for use principally off public roads. See Va.Code Ann. § 46.1–45 (Additional Supp. 1962). The use of semi-colons would indicate that the Virginia Court was approving several alternative definitions in the disjunctive, and so an automobile could be merely a "wheeled vehicle propelled by gasoline, steam, or electricity * * *"

Looking to decisions in other jurisdictions, this Court finds support for its idea that a vehicle does not have to be designed primarily for use on public roads to be an automobile. In Smith v. Stewart, 21 A.D.2d 551, 251 N.Y.S.2d 342, 346 (1964), the court was concerned with an unregistered vehicle from which the doors, headlights, fenders, and hood had been removed and in which a home-made stake body had been substituted for the rear seating compartment. This vehicle was held to be an automobile (rather than a farm implement) within the terms of the insurance policy. Several courts have held that an automobile is a wheeled vehicle propelled by gas, steam, or electricity (or words of similar effect). See, for instance: Continental Casualty Co. v. Buckeye Union Cas. Co., 143 N.E.2d 169, 172 (Ohio Com.Pl.1957),

where, in a policy almost identical to the one in issue here, a truck rented from "U-Drive It" was held to be an automobile. See also Paupst v. McKendry, 187 Pa.Super. 646, 145 A.2d 725, 728 (1958).

The Kentucky Court, in Washington Nat'l Ins. Co. v. Burke, 258 S.W.2d 709, 711, 38 A.L.R.2d 861 (1953), said that as a generic term, "automobile" was broad enough to cover all forms of self-propelling vehicles, but that the word should be construed in light of the context and purposes of the instrument in which it is used. In American Mut. Liab. Ins. Co. v. Chaput, 95 N.H. 200, 60 A.2d 118, 121 (1948), a gasoline motor tractor which was *capable* of travelling on the highway was held to be an automobile. The accident in this case occurred on private property while the vehicle was being used to scoop gravel from a bank and deposit it in a truck.

Looking at all the circumstances of this case, and construing the word in the light of the context and purpose of the insurance policy issued by Government Employees, the Court holds that the Perdue logging rig was, at the time of the accident, an "automobile" within the terms of that policy.

■ (2) *Was the logging rig an "owned automobile" within the meaning of Virginia law and the terms of the Government Employees policy?*

There seems to be little serious dispute that Perdue bought and paid for the sawmill truck and, in that sense, was the "owner" of the vehicle. Counsel for Government Employees contends, however, that since no certificate of title was issued to Perdue, he did not "own" the vehicle and hence it does not come within the policy. Counsel's line of reasoning here seems to the Court a bit strained and artificial, but even accepting it *arguendo*, the policy still provides coverage for the Perdue automobile under Insuring Agreement IV(a) (3) which reads:

IV(a) Automobile. Except with respect to division 2 of coverage C and

except where stated to the contrary, the word "automobile" means:

    \*    \*    \*    \*    \*    \*

(3) Temporary Substitute Automobile—Under coverages A, B and division 1 of coverage C, an automobile not owned by the named insured or his spouse if a resident of the same household, while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; \* \* \*

According to Perdue's statement, the 1953 Chevrolet which he was using on the day of the accident had, through a series of trades, replaced the 1955 Chevrolet described in the policy of insurance. Note that the provisions relating to newly acquired automobiles, supra, do not require notice to the insurer when the new vehicle replaces a described automobile. The sawmill truck was being used to take a tire which had gone flat on the Chevrolet to be repaired, and so was a temporary substitute automobile which replaced the described automobile.

As tires are necessary to the operation of an automobile, it has been deemed to follow that a "breakdown" occurs, so far as a "substitution" provision is concerned, where the condition of the tires on the described vehicle is such that it is immobilized or unfit for normal use. 12 Couch, Insurance Law § 45:226 (2d ed. 1964).

There are no Virginia cases directly on point here, but to this same effect see: Fullilove v. United States Cas. Co., 240 La. 859, 125 So.2d 389 (1960); Mid-Continent Cas. Co. v. West, 351 P.2d 398 (Okla. 1960); 7 Appleman, Insurance § 4293.5 (1942 and Supp. 1965).

(3) *Was coverage voided by failure to notify the insurer of the accident "as soon as practicable"?*

Counsel has not pursued this point in his memorandum, and so it is assumed that he attaches little importance to it. However, the Court will deal with the matter briefly since it was raised in the answer.

Perdue did not give Government Employees notice of the accident until November 22, 1963, or approximately sixty-six days after it occurred. His reason for this delay was his belief that the rig was not covered by the policy.

■ The provisions requiring notice of the accident are reasonable and valid stipulations and must be complied with by the insured. The purpose is to give the insurer an opportunity to make a timely investigation and, if necessary, prepare an adequate defense on behalf of the insured. North River Ins. Co. of New York v. Gourdine, 205 Va. 57, 135 S.E.2d 120 (1964).

This Court will assume, without deciding, that the Virginia Court adheres to the oft-stated doctrine that a violation of the terms of the policy releases the insurer from liability regardless of a showing of actual prejudice. An examination of Virginia decisions will reveal, however, that prejudice to the insurer is, in fact, considered in cases of this sort.

■ The alleged failure on the part of the insured must be material and substantial in some respect, and in assessing the materiality of the breach, the court may consider whether the insurer was prejudiced thereby. Nationwide Mut. Ins. Co. v. Gentry, 202 Va. 338, 117 S.E. 2d 76, 81 (1960), and cases cited therein. See also North River Ins. Co. of New York v. Gourdine, supra, at p. 125.

Here the purpose of the clause was not frustrated by a lapse of sixty-six days between the accident and notice. Government Employees had ample opportunity to investigate and prepare a defense, as notice was given on November 22, 1963, and judgment was not rendered in the case until June 5, 1964. The

facts will show that Government Employees did prepare and file an answer but subsequently withdrew as counsel.

Looking at all the facts and circumstances surrounding this case, the Court holds that Perdue's failure to notify Government Employees until approximately sixty-six days after the accident occurred was neither material nor substantial. Perdue had a reasonable explanation for his non-feasance and Government Employees was not prejudiced thereby.

(4) *Was coverage voided by Perdue's failure to notify the company of the acquisition of the automobile within thirty days?*

The policy issued by Government Employees provided "automatic insurance" for newly acquired automobiles under Insuring Agreement IV(a) (4), supra (Agreement IV is entitled: "Automobile Defined, Trailers, Private Passenger Automobile, Two or More Automobiles, Including Automatic Insurance."). The manifest purpose of such a clause is to have coverage attach at the earliest possible date. Maryland Casualty Co. v. Toney, 178 Va. 196, 16 S.E.2d 340 (1941).

The question is whether notice is a condition subsequent or a condition precedent to coverage attaching. Almost without exception, the cases hold that coverage attaches, subject to be divested by a condition subsequent (failure to notify), and so if an accident occurs during the notice period, the insurance company is bound. See Inland Mut. Ins. Co. v. Stallings, 263 F.2d 852 (4th Cir. 1959), and cases cited therein. Note also Annot., 34 A.L.R.2d 936, 944 (1954), and 12 Couch, Insurance Law § 45:205 (2d ed. 1964).

In the Inland Mutual case, supra, Chief Judge Sobeloff held that coverage on a newly acquired automobile was automatically effected for thirty days irrespective of notice, and the insured is protected against liability accruing within that time.

Since the Inland Mutual case, the Supreme Court of Appeals of Virginia has spoken on this subject in Celina Mutual Ins. Co. v. Cohen, 204 Va. 763, 133 S.E.2d 311 (1963). There, the policy provided that coverage would be effected on newly acquired automobiles if the insured gave the insurer notice *within the period of the policy*. The policy in the Celina case contained the standard clause (also present here) that no action should lie against the company unless, as a condition precedent thereto, the insured should have fully complied with all the terms of the policy. The Virginia Court held that notice in that case was a condition precedent and coverage did not attach because notice was not given during the policy period.

Counsel for Government Employees urges that the Celina case in effect "overrules" Inland Mutual, since the Fourth Circuit in the latter decision had no authoritative Virginia ruling to rely on. This contention would be well founded except for the fact that the two cases are distinguishable.

Counsel for Government Employees note in their brief that the so-called automatic clauses are of two types:

(1) those requiring notice within a specified period (generally thirty days, as in this case and in Inland Mutual) and

(2) those in which the insured may notify the company at any time during the policy period of the acquisition of a new automobile (as in the Celina case).

Admittedly, the distinction between the two types of clauses is difficult to accurately delineate, but the Court believes there is a significant difference, which fixes liability on Government Employees and is consonant with the right and justice of the case.

Taking first the clause which requires notice to be given within 30 days of the acquisition of the automobile, it would seem logical to interpret this as sort of a "grace period". The clause would seem to require notice *as of the date of ac-*

*quisition* of the automobile, but the insurance company is designedly giving the insured a broader protection by permitting notice within the 30-day period to be deemed notice as of the date of acquisition of the vehicle. Since notice is required as of the date of acquisition, *coverage attaches as of the date of acquisition,* subject to being divested by subsequent failure to give notice. *Coverage* here should be distinguished from *liability of the company* if an accident occurs within the thirty days. If there is coverage from the date of acquisition, then the company becomes liable for an accident occurring during the grace period. This *liability*, once attached, is *NOT* subject to be divested by subsequent non-feasance on the part of the insured. If there is no accident and no notice within the period, then that car can never be covered by that policy—the insured has violated the grace period and missed his chance to bring the car under the terms of the policy.

Let us take this example and assume that a policy is issued on September 1, and a new car is acquired on September 5. The insured has until October 4 to notify the company of this new acquisition. If he notifies the company on October 3, then he is charged the additional premium on that car from September 5, the date of acquisition, until August 31, the date of expiration of the policy the next year. He is NOT charged premiums just from date of notification, October 3. This would seem to bear out the "grace period" interpretation which says coverage attaches as of the date of acquisition. Otherwise, the insurance carrier would be charging the insured premiums for a period, almost one month, during which (according to Government Employees now) the car was not covered. This would indicate that notice is a condition subsequent. That such an interpretation is valid seems to be borne out by the very fact that there are two types of clauses of this sort, and that virtually all the cases (including our 4th Circuit) which have considered the thirty-day type have held notice to be a condition subsequent.

Now consider the "policy period" type of clause. Here notice may be given at any time during the policy period. Notice is NOT required as of the date of acquisition, but required only at such time that the insured wishes coverage to attach. Therefore, notice is a *condition precedent,* and no coverage attaches until notice.

Note again the problem of premium adjustment: with this type of clause, the insured is charged premiums only from the *date of notice* and not from the date of acquisition of the automobile, signifying that coverage attaches as of *notice* and not as of *acquisition.* This is the type of clause the Virginia Court was concerned with in the Celina Mutual case, and the opinion certainly did not suggest that the Court was including all insurance policies, regardless of the type of clause employed.

Precedent conditions are those to be performed before the obligation commences. In Celina there was a precedent condition that was not performed during the policy period—hence, no liability.

In our case the insurance policy expressly provides (as in Inland) that coverage on the newly acquired automobile was automatically effective for 30 days, after acquisition, and this Court finds that such coverage was effective, irrespective of notice. Since there was coverage at the time of the accident, the insured should certainly be protected "against liability accruing within that time".

In the case of the "policy period" type clause, where coverage attaches as of notice, (and not as of the date of acquisition) this provision is more *lenient* in the respect that the insured, by his act, can bring the automobile within the policy at any time during its duration, but in another sense is more *restrictive,* in that coverage will not attach until notice is duly given. It would be going quite far to say that notice at *any time* during the policy period will be deemed notice as of the date of acquisition, but

this Court believes such a construction is warranted with respect to the thirty-day period.

Let us consider one further hypothetical example. Suppose the insured has purchased a new Chevrolet automobile and he has an accident while driving it home from the dealer's lot. Assume that this is not a replacement for one of the described automobiles, and so notice within thirty days is required by the policy. It would be harsh and unconscionable to hold that this automobile does not fall under the automatic clause of the insured's policy. To permit the insurance carrier to prevail in this situation would enable it to escape liability on a technicality and would run contrary to the general policies underlying liability insurance.

Unfortunately, the insurance policy in question does not precisely define "automatic coverage". Ambiguous words and terms (i. e., "automatic insurance") are to be construed most strongly against the insurer. Government Employees contends that this phrase is clarified by the clause which says that no action shall lie against the company unless, as a condition precedent thereto, all terms shall have been complied with, etc. The answer to this argument is that such a "condition precedent clause" is *incompatible* with the concept of automatic insurance, and such a blanket provision conflicts with the specific section (IV (a) (4) of the policy.

The Court therefore holds that coverage attached automatically during the thirty-day period and became absolute (with respect to this particular accident) as of the date of the accident, and that Government Employees Insurance Company is primarily liable to plaintiff for the full amount of his judgment, $15,000, plus costs, and for interest at six percent per annum from June 5, 1964. An order will be entered requiring payment to Charles Wayne Brown of that amount and holding Security Fire and Indemnity Company secondarily liable to plaintiff under the uninsured motorists provisions of its policy.