THE MEDICAL PROTECTIVE CO. *v.* LIGHT, ADMX.

(Decided October 31, 1934.)

*Mr. R. H. Nesbitt,* for plaintiff in error.

*Messrs. Smoyer, Kennedy, Smoyer & Vogel,* for defendant in error.

LEVINE, J. The parties appear in this court in an order the reverse of that held in the Common Pleas Court. Estella Light, administratrix, plaintiff below, recovered a judgment in the Common Pleas Court against the Medical Protective Company, and error proceedings are here instituted seeking a reversal of said judgment. The bill of exceptions shows that the cause was submitted to the trial judge upon an agreed statement of facts. It appears that on the sixteenth day of November, 1932, defendant in error, Estella Light, administratrix, recovered a judgment against Dr. William C. Terwilliger, upon a cause of action founded upon his alleged negligent treatment of plaintiff's decedent, Mary Pauline Light. Later, the present action was commenced in the Court of Common Pleas to subject the insurance money, under a policy of insurance which The Medical Protective Company issued and delivered to Dr. Terwilliger.

The Medical Protective Company answered, setting forth an alleged breach of certain requirements of the policy with respect to attendance upon the trial and co-operation, which requirements, it claimed, Terwilliger failed to meet.

A reply was filed in behalf of the defendant in error, administratrix, wherein it was denied that the conditions of the policy had the legal effect claimed for

them, and was also asserted that The Medical Protective Company was estopped from alleging such defense.

The Medical Protective Company offered in evidence the policy and the application leading thereto. The application of Dr. Terwilliger contained, among other representations, the following:

"I agree not to make or contract any expense in a claim or suit under such contract without the written authorization of the company; and will attend, assist, and co-operate in the preparation and defense of any claim or suit filed against me without charge to the company."

There are various exhibits attached to the bill of exceptions showing that counsel for The Medical Protective Company wrote to Dr. Terwilliger, who was then residing at Longview, Texas, advising him that the case filed against him in the Common Pleas Court was assigned for trial for Monday, May 23, 1932, and requesting him to be at the office of the attorney not later than Saturday morning preceding the date of the trial, accompanied by the doctor's wife, who was a material witness. A preceding letter which the insurance company wrote to Dr. Terwilliger at Longview, Texas, said in part:

"We also think it would be well for Mrs. Terwilliger to be present at the trial. * * * You understand, of course, that the policy we issued to you obligates you to attend the trial of any case at your own expense. We mention this at this time so there may be no misunderstanding in the matter." (Exhibit I.)

Dr. Terwilliger did not appear at the trial May 23, 1932, and at the request of counsel for The Medical Protective Company the case was continued to a later date.

On September 6, 1932, counsel for The Medical Protective Company advised the doctor of the continuance and asked him to be present to attend the trial when

he should receive notice that the case was set for trial.

On October 7, 1932, counsel again wrote Dr. Terwilliger, informing him of the special assignment of his case for trial on October 26, and requesting him to be present a few days prior to the trial to assist in the preparation of the case.

On October 13, 1932, counsel again wrote to Dr. Terwilliger to similar effect.

When the case against Dr. Terwilliger came on for trial on October 26, a Mr. Jeter, of the office of Mr. R. H. Nesbitt, counsel for The Medical Protective Company, appeared in court. Mr. Jeter moved the court for a further continuance of the case of from three to six months. The reason assigned was that Dr. Terwilliger had communicated with Mr. Nesbitt and informed him that it would be impossible for him to appear at the trial on October 26. The court overruled the motion for a continuance. Mr. Jeter then announced to the court that "Mr. Nesbitt withdraws from the defense of this case."

Exhibit G, attached to the record, dated October 20, 1932, is a letter from Dr. Terwilliger to The Medical Protective Company, in which he advised that his financial condition made it impossible for himself and his wife to appear on the date of trial, and he asked the insurance company to obtain a continuance of the trial of from three to six months, at which time he agreed to be in Akron, and at which time he said he would be glad to assist and co-operate with "our lawyer in this trial." This letter from Dr. Terwilliger among other things contained the following:

"The railroad fare alone for two passengers round trip to Akron, Ohio, would be $200.00 in addition to whatever expenses would be incurred while attending the trial, and to be able to secure that amount of money at this day and age would be a financial impossibility."

The record before us shows that when Mr. Jeter moved the court for a further continuance of the case

he informed the court that Dr. Terwilliger had written to the insurance company that it would be impossible for him and his wife to appear for trial on October 26, and requested a continuance of from three to six months. He did not, however, inform the court of the reasons given by Dr. Terwilliger for his inability to attend.

We are confronted with two problems:

1. Was there a breach of the terms of the policy on the part of the assured, Dr. Terwilliger, when he did not comply with the notice of counsel for The Medical Protective Company requesting him to appear at the office of counsel a few days before the trial, and when he failed to attend the trial?

In order to construe the particular clause wherein Dr. Terwilliger, the assured, agrees that he "will attend, assist, and co-operate in the preparation and defense of any claim or suit filed against me without charge to the Company", we must have reference to other provisions of the policy and construe them as a whole. In the body of the policy it is provided that the company should defend and indemnify Dr. Terwilliger against any claim or suit for damages arising from malpractice, error, or mistake in the practice of his profession. It also provides:

"(d) Upon receipt of notice the company shall immediately assume full responsibility for the defense of any such claim or suit and shall retain local legal counsel, in whose selection the holder hereof shall have a voice, who in conjunction with the legal department of the company shall defend without expense to the holder hereof. * * *

"(f) Such defense shall be at the company's own cost and expense and without limit as to the amount expended."

Did the company have the legal right to require Dr. Terwilliger to produce his wife as a witness upon the trial; or to demand that he travel from his place of

residence in Longview, Texas, to Akron, at his own expense? True, in his application he agreed "to attend, assist, and co-operate * * * without charge to the company", yet in the body of the policy it is provided that "such defense shall be at the company's own cost and expense and without limit as to the amount expended." It is difficult to comprehend that it was the intention of the parties that if Dr. Terwilliger found himself a great distance away from the scene of the trial he was still obliged under the terms of his agreement to spend his own money in order to attend the trial.

Reading the agreement of Dr. Terwilliger, as found in his application, together with provision (f) of the policy, we conclude that all that was intended was that he would not make any charge as a medical practitioner for his medical services as a witness. In view of the fact that the doctor informed the company that it was a financial impossibility for him to travel from Texas to Akron at his own expense, and in view of the information given to him in advance by counsel for the company that he must make no charge to the company incident to his attendance upon the trial, it cannot be said as a matter of law that he breached the contract of insurance by his non-attendance. We are further of the opinion that under the terms of the policy it was the duty of the company to incur the traveling expenses and other expenses incidental to Dr. Terwilliger attending the trial. It will be seen that counsel for the company demanded of Dr. Terwilliger not only that he appear and attend the trial without charge, but requested and demanded that he bring his wife for the trial. No such obligation can be read in the policy, under any possible construction, that would require Dr. Terwilliger to provide traveling expenses and other expenses to enable his wife to attend the trial.

In *Finkle* v. *Western Automobile Ins. Co.*, 224 Mo. App., 285, 26 S. W. (2d), 843, the court states:

"Under such a situation, it appears that there are two ultimate questions to be determined: First, whether the assured was guilty of bad faith in leaving; and second, whether the company exercised reasonable diligence in ascertaining his whereabouts, and in procuring his attendance at the trial or his deposition for use in lieu of a personal appearance."

At the time of the alleged malpractice, the policy was in full force and effect, and if the company is to avoid liability it would be merely upon the ground that the assured, Dr. Terwilliger, was guilty of a breach of a condition subsequent.

2. There is a more serious point to be considered, namely, that when counsel for Dr. Terwilliger made his application to the Common Pleas Court for a continuance of the cause, counsel did not inform the court of the reasons set forth in Dr. Terwilliger's letter as to why he was unable to attend the trial. It is true that he informed the court, substantially, that Dr. Terwilliger, by letter, informed counsel that it was an impossibility for him to attend the trial on October 26, but he did not divulge what seems to us the essential part of the doctor's letter, namely the reason for his inability to attend upon the trial on said date. The record discloses also that counsel for the defendant in error was not informed of the text of Dr. Terwilliger's letter and of the reason assigned by him for his inability to attend the trial.

In the case of *Hartford Accident & Indemnity Co.* v. *Randall,* 125 Ohio St., 581, 183 N. E., 433, the Supreme Court held:

"4. A person injured by the assured in such manner as to entitle the assured to indemnity under the policy, has such potential beneficial interest in the policy, by the provisions of Section 9510-4, General Code, as to

warrant such injured person to comply with the terms and conditions of the policy agreed to be performed by the assured, even though such performance be without the knowledge or concurrence of the assured, and a waiver to such injured party is equivalent to a waiver to the assured.

"5. An estoppel is created against an insurance company by the duly authorized agent of the company making a statement to the assured, or to a party injured by the assured, that it will not defend an action, if by that statement the assured or such injured party is induced to inaction, thereby altering his position to his prejudice."

In the opinion, on page 585, the court stated as follows:

"It must be held that by virtue of Section 9510-4, General Code, an injured person has a potential interest and a substantial right in the policy from the very moment of his injury, and, although it does not develop into a vested right until a judgment is secured, his rights are such, even before judgment, as to entitle him to comply with the terms and conditions of the policy, and thus make them effective in his behalf in the event the insured fails to discharge his duty under the policy."

It seems to us that counsel for the defendant in error were entitled to the information, as the defendant in error had a right to remove the only reason which prevented the presence of Dr. Terwilliger upon the trial. Had counsel for defendant in error been advised that Dr. Terwilliger needed two hundred dollars to bring himself and his wife to Akron, since his wife was not under the terms of the policy required to come, one-half of that sum would have been ample for that purpose. Defendant in error was entitled to an opportunity to make compliance with this condition. Since, in the language of *Hartford Accident & Indem-*

*nity Company* v. *Randall, supra,* it is held that "a person injured by the assured * * * has such potential beneficial interest in the policy" by reason of the provisions of Section 9510-4, General Code, it was the duty of counsel for plaintiff·in error to give the information to counsel for defendant in error so as to afford them an opportunity to make compliance.

It is our conclusion, First: That the failure of Dr. Terwilliger to come to Akron a few days before the trial, and to attend the trial, and also his failure to bring his wife with him at his own expense, did not constitute a breach of this condition subsequent contained in the doctor's application. Construing the application and the policy as a whole, we read into the provisions the intention that the doctor shall not make any professional charge for attendance upon the trial; but that he did not thereby undertake to travel a great distance at his own expense in order to attend the trial. Under no possible construction of the application in the policy did he undertake to bring his wife to the trial, when bringing her entailed a large expense, and the company had indicated in advance that it would not meet such expense.

It is our conclusion, Second: That when Dr. Terwilliger informed the company, from Longview, Texas, that it was a financial impossibility for him to comply with the request of the company, as the same entailed an expenditure of two hundred dollars, it was the duty of the company, under provision (f) of the policy, to furnish him the necessary expenses.

Third: It was the duty of counsel for the company to inform the court on October 26, 1932, when the case against Dr. Terwilliger came up for trial, not only that the doctor informed the company that he was unable to attend the trial on said date, and requested a continuance, but also to divulge the reason given by the doctor for his inability to attend. It was likewise the

duty of the company possessed of this information to inform counsel for defendant in error of the reason assigned by Dr. Terwilliger, because defendant in error would have been thereby given an opportunity to make compliance. Failure of the insurance company, through its counsel, to give the information contained in Dr. Terwilliger's letter, either to the court or to counsel for defendant in error, creates an estoppel against the insurance company, and the company is therefore estopped from asserting the defense of a breach of the condition subsequent on the part of the assured Dr. Terwilliger because of his non-attendance upon the trial.

Holding as we do the judgment of the Common Pleas Court will be affirmed.

*Judgment affirmed.*

LIEGHLEY, P. J., and McGILL, J., concur.

LIEGHLEY, P. J., LEVINE and McGILL, JJ., of the Eighth Appellate District, sitting by designation in the Ninth Appellate District.