Strafford,
Oct. 6, 1936.

GLENS FALLS INDEMNITY CO.

*v.*

THOMAS R. KELIHER, *& a.*

*Hughes & Burns* (*Mr. Burns* orally), for the plaintiff.

*Conrad E. Snow* (by brief and orally), for the defendants.

BRANCH, J.  Although the questions presented by the plaintiff's petition might have been raised as matters of defence to a bill in equity brought by the defendants Ethel W. Adams and Joseph V. Adams against the plaintiff company to secure the payment of their judg-

ments against the defendant Keliher in accordance with the procedure approved by this court in *Sanders* v. *Insurance Co.*, 72 N. H. 485, a petition for a declaratory judgment like that now before us appears to be the only recognized method by which the plaintiff company could, of its own motion, secure a decision of the questions here involved. This proceeding is, therefore, properly brought under the declaratory judgment act, Laws 1929, *c.* 86, one effect of which is "to enable the normal defendant to institute the proceedings." *Faulkner* v. *Keene*, 85 N. H. 147, 155.

The provision of the policy that the assured shall coöperate in the defence of all suits against him is stated to be a condition of the plaintiff's agreements, including the agreement to indemnify the assured against liability for personal injuries resulting from the operation of the motor vehicle described therein, and it appears to be conceded by the defendants that a material breach of this condition would relieve the plaintiff from liability under the policy. The authorities leave no room for doubt upon this question. "Policies containing covenants the same as or similar to those contained in this policy have been so often sustained that the question should be considered at rest." *Watkins* v. *Watkins*, 210 Wis. 606. See notes on "Liability Insurance—Cooperation," in 72 A. L. R. 1446 and 98 A. L. R. 1465, where the cases are collected. Whether a condition of the kind here involved shall be called a condition precedent as in *Bachhuber* v. *Boosalis*, 200 Wis. 574, or a condition subsequent as in *Medical &c Co.* v. *Light*, 48 Oh. App. 508, is perhaps a barren speculation, but since the effect of the assured's failure to coöperate is to relieve the insurer from an obligation which has already attached, subject to possible defeasance, it seems more in accord with the customary use of English terms to call this provision a condition subsequent. It is, in either event, a "material condition of the policy" the violation of which by the assured destroys the right to claim indemnity thereunder. *Royal Indemnity Co.* v. *Morris*, 37 Fed. (2d) 90. In *Ward* v. *Casualty Co.*, 71 N. H. 262, this was assumed without discussion to be the law.

The question, whether the conduct of the defendant Keliher constituted a violation of his obligation to coöperate and assist the company in defending the action against him, was a question of fact to be determined in the Superior Court (*Ward* v. *Casualty Co.*, *supra*, 267, 268) which has been decided adversely to the defendants. They now argue, however, that the finding of the trial court should be set aside for three reasons: 1, because "There was no sufficient

evidence that Mr. Keliher violated his agreement to cooperate";
2, because "Petitioner negligently caused Mr. Keliher's condition
on which it now relies as a breach of his agreement to cooperate," and
3, because "Petitioner failed to sustain the burden of showing a sub-
stantial and material injury through the alleged failure to cooperate
and assist."

The first of these contentions hardly merits attention. The court
found, in effect, that Keliher got drunk and thereby disabled himself
from appearing in court on the day after the jury was drawn and
when the trial was about to start, and thereafter, upon the same day,
disappeared so that he could not be found by plaintiff's counsel or
the sheriff of the county. Without reference to his subsequent con-
duct, which was equally indefensible, these facts were amply sufficient
to sustain the finding of the trial court that Keliher "violated his
agreement to cooperate and assist the company in defending the ac-
tion."

Defendants' second contention is equally without merit. The
substance of the claim is that the plaintiff, through its agents, was
negligent because it placed in Keliher's hands the money which he
presumably used to purchase liquor. In support of this claim, refer-
ence is made to the admitted fact that, upon February 25, 1935, the
first day of the trial, plaintiff's counsel, Mr. Burns, gave to Mr.
Keliher, who was then wholly without funds, a check for $20 and to
the testimony of James J. Cotter, of Lynn, Massachusetts, the plain-
tiff's agent who wrote Mr. Keliher's policy on January 1, 1933, that
since the death of his mother in September 1933, Keliher had been a
drunkard and wholly irresponsible and that if money was put in his
hands he immediately drank. The argument seems to be that the
plaintiff company was chargeable with Mr. Cotter's knowledge of
Keliher's habits acquired long after the policy in question was issued,
through occurrences which had no connection whatever with his
agency, and that the conduct of the company's attorney, Mr. Burns,
in giving Keliher money to meet his immediate necessities was, there-
fore, as a matter of law, negligent. We know of no rule or rules of
law which compel these conclusions nor have any authorities sus-
taining the defendants' contention been called to our attention. The
question of the plaintiff's negligence was, at best, one of fact which
has been decided adversely to the defendants by the refusal of the
trial court to make a finding of negligence in accordance with their
request.

With reference to the defendants' third contention, the trial court

found as follows: "Counsel have asked for a finding that the failure of Mr. Keliher to cooperate did not adversely affect the result. Both the writs of Joseph V. Adams and Ethel W. Adams allege that the accident was caused by Keliher being upon the wrong side of the highway in violation of law. Mr. Keliher had pleaded guilty to this offense on the day following the accident and paid a fine of five dollars and costs. So far as liability went, the Court finds it to be more probable than otherwise that liability would have been established if Mr. Keliher had testified, but as to any other effectual assistance he might have given in the conduct of the case the Court makes no findings."

In view of the court's finding that it is "more probable than otherwise that liability would have been established if Mr. Keliher had testified," counsel for the defendants argue that his absence from the trial did not harm the defendant and, therefore, that his refusal to coöperate was not material.

There are both practical and theoretical answers to this argument. Every person familiar with the trial of cases by jury knows that the case of an individual defendant is seriously, if not hopelessly, prejudiced by his absence from the trial. Such absence, if not adequately explained, is a circumstance, "chiefly persuasive as distinguished from probative in its effect," (*Login* v. *Waisman*, 82 N. H. 500, 502) which normally affects the decision of the jury upon all questions submitted to them. Even if the liability of a defendant were admitted or conclusively established, it cannot be doubted that the mental attitude of the jury in assessing damages would be influenced by his unexplained absence from the court room. Due regard for the current demand for realism in the administration of the law does not permit the adoption of the defendants' argument that the plaintiff was not prejudiced by Keliher's absence from the trial of the case against him.

The theoretical answer to the defendants' argument, which is equally complete, was well stated by *Cardozo*, J. in *Coleman* v. *Casualty Co.*, 247 N. Y. 271, as follows: "The argument misconceives the effect of a refusal. Co-operation with the insurer is one of the conditions of the policy. When the condition was broken, the policy was at an end, if the insurer so elected. The case is not one of the breach of a mere covenant, where the consequences may vary with fluctuations of the damage. There has been a failure to fulfill a condition upon which obligation is dependent."

A breach of condition is no less decisive in its effect than a breach

of warranty with reference to which we have recently stated the law as follows: "It may be taken as still law in New Hampshire that if a fraudulent statement in an application is to be regarded as a warranty, the question of 'materiality' is not one of fact for the jury, but one of law for the court in determining whether the statement is material in the sense that it was intended by the parties to be a part of the contract. This view restricts the question to one of construction of the policy itself." *Amoskeag Trust Co.* v. *Insurance Co. ante,* 154. In other words, while the law may disregard trivial and innocent breaches of condition, and while the character of the assured's conduct and the importance of its probable effect upon the interests of the insurer may be considered for the purpose of determining whether there has been a substantial breach, all questions of actual harm and probable effect become immaterial when a breach of condition has been definitely established.

From the foregoing discussion it follows that the exceptions of the defendants, Ethel W. and Joseph V. Adams must be overruled, and it is, therefore, unnecessary to consider the question whether the claim of Joseph V. Adams was within the coverage of the policy.

There remains for consideration the exception of the plaintiff to the trial court's ruling that the letter of Mr. Dignan, dated August 8, 1933, constituted an unconditional and independent agreement with Mrs. Adams to pay any judgment entered against Mr. Keliher in her suit, within the limits of the policy. The plaintiff attacks this ruling upon two grounds: 1, "Because the letter by its terms had reference to the original policy of insurance issued to Keliher" and hence could not properly be construed as an independent agreement, and 2, "Because Dignan had no authority to bind the Insurance Company by any independent agreement."

We think that the plaintiff's first position is well taken, and therefore, do not consider the merits of the second. The letter first recites the issuance of the policy. It next states that the policy was in force at the time of the accident, and finally that "the company will pay any judgments entered against Mr. Keliher up to and including the limits of the policy which are as follows: $5,000. Any one person for bodily injury." We think it plain that the true intent and meaning of the language above quoted was that the company would pay, in accordance with the terms of the policy, any judgments entered against Mr. Keliher within the policy limits. The idea that Mr. Dignan, when he wrote this letter, undertook, on behalf of the company, to guarantee the payment of any judgment entered against

Mr. Keliher in Mrs. Adams' suit, without regard to the conditions of the policy,—to which he referred no less than three times,—appears so improbable, that an interpretation leading to such an unintended result should not be adopted if another reasonable construction of the language is possible. In this case the alternative is obvious. The letter should be construed as though it read as follows: "Subject to the terms and conditions of said policy, the company will pay any judgments entered against Mr. Keliher up to and including the limits of the policy." Since the only obligation of the company to pay the judgment in Mrs. Adams' suit was subject to the conditions of the policy and since a breach of a material condition has been established, it follows that the obligation of the plaintiff with reference to her judgment is at an end and the plaintiff is entitled to judgment in this proceeding, in accordance with the first prayer of its petition.

*Judgment for the plaintiff.*

All concurred.