CHARLES WALLACE, an Infant, by DOROTHY WALLACE, His Guardian ad Litem, et al., Respondents, *v.* UNIVERSAL INSURANCE COMPANY, INC., Appellant.

First Department, March 7, 1963.

*Harry Fass* of counsel (*Weintraub & Fass,* attorneys), for appellant.

*Ira L. Levinson* for respondents.

BOTEIN, P. J.   Prior to the commencement of this action plaintiffs had recovered a judgment against one Frank Floyd in a personal injury action.   The injuries resulted from the operation of an automobile owned by Floyd, to whom defendant insurance carrier had issued a policy of insurance.   In the present action plaintiffs seek to charge defendant with the amount of the judgment, pursuant to section 167 of the Insurance Law.   Defendant's contention, based on the construction of the predecessor statute to section 167 in *Coleman* v. *New Amsterdam Cas. Co.* (247 N. Y.

271), is that Floyd had breached the condition of the policy requiring co-operation in the preparation, settlement and defense of the personal injury action. After trial without a jury the court found in favor of plaintiffs in the amount of the judgment previously obtained in the personal injury action, and defendant appeals from the consequent judgment against it.

The defense of the personal injury action was undertaken by a firm of attorneys retained by defendant. The member of the firm in charge of the matter, Clark, was defendant's chief witness at the trial. From his testimony it appears unquestionably that for a time Floyd gave adequate co-operation. He furnished a written statement of facts which if believed could exculpate him, verified an answer, and discussed the case with Clark in anticipation of an examination before trial. The examination was adjourned three times at Clark's request and during this period Floyd evidently kept himself available. When it appeared that no further adjournment would be granted an effort was made to communicate with him by telephone and letter. It was unsuccessful. Thereafter further efforts to reach him were tried, but contact was never made. The attorneys sought permission from the court to withdraw their representation and, permission having been denied, " sat mute " through the ensuing trial of the personal injury action.

The core question raised by the record is whether defendant made adequately appropriate efforts that in the circumstances could have been reasonably contemplated to locate Floyd had he been available. The insurer's responsibility in this regard has received frequent recognition. As stated in *Imperiali* v. *Pica* (338 Mass. 494, 498), " an insurer cannot be relieved of liability because of an alleged breach of a cooperation clause by the insured in a situation where it has not itself exercised diligence and good faith. * * * Elementary principles of justice and fair dealing require such a rule. The obligations under a cooperation clause are reciprocal. The insured must cooperate; but the insurer is under a duty to exercise diligence and good faith in bringing that about " (and see *Shalita* v. *American Motorists Ins. Co.,* 266 App. Div. 131, motion for leave to appeal denied 291 N. Y. 831 [where the parties stipulated that the insurer had made " Every reasonable effort possible " to locate its insured]; *Heimbecher* v. *Johnson,* 258 Wis. 200, 205; *Indemnity Ins. Co. of North America,* 197 Md. 160, 165; *Gregory* v. *Highway Ins. Co.,* 24 Ill. App. 2d 285, 298; *Medical Protective Co.* v. *Light,* 48 Ohio App. 508, 514; *Finkle* v. *Western Automobile Ins. Co.,* 224 Mo. App. 285, 297; *Kraynick* v. *Nationwide Ins. Co.,* 72 N. J. Super. 34- 39, 40; 60 A. L. R. 2d 1146, 1163, 1166).

In measuring the insurer's obligation of diligence the co-operation clause must be read with an eye to the purpose of the instrument containing it. Floyd's policy was issued in 1958. By that time the exigencies of persons injured by financially irresponsible motorists had found reflection in a compulsory insurance law (the Motor Vehicle Financial Security Act) pursuant to a legislative determination that "it is a matter of grave concern that motorists shall be financially able to respond in damages for their negligent acts, so that innocent victims of motor vehicle accidents may be recompensed for the injury and financial loss inflicted upon them" (Vehicle and Traffic Law, § 310, in effect as § 93 when Floyd's policy was issued).

To be sure, the Financial Security Act did not impose an absolute liability in favor of the injured person. Subject to section 167 (subd. 1, par. [b]) of the Insurance Law, the insurer was still permitted to condition its liability upon the insured's compliance with the terms of the policy (see *National Grange Mut. Liab. Co.* v. *Fino,* 13 A D 2d 10; *General Acc. Fire & Life Assur. Corp.* v. *Martino,* 12 Misc 2d 935; 11 NYCRR 60.3 [e], [f]; cf. Vehicle and Traffic Law, § 311, subd. 4 with § 345, subd. [i], par. [1]), leaving what has been called "a gap in the statute" (*Teeter* v. *Allstate Ins. Co.,* 9 A D 2d 176, 184, affd. 9 N Y 2d 655), to which the Legislature later directed corrective attention not applicable to this case (see Insurance Law, § 167, subd. 2-a; art. 17-A). But surely, also, the insurer's responsibility under the co-operation clause must be viewed in the frame of the State's emphasized solicitude for the victims of automobile accidents (cf. *Lauritano* v. *American Fed. Fire Ins. Co.,* 3 A D 2d 564, 567–568, affd. 4 N Y 2d 1028). Such an emerging responsibility blends with the general legislative purpose, as well as with the anticipations of insurers entirely aware of that purpose; and, we may add, in no wise trespasses on the authority of *Coleman* v. *New Amsterdam Cas. Co.* (247 N. Y. 271, *supra*) Circuit Judge SOBELOFF has phrased the matter well: "The problem of non-cooperation has a dual aspect; not only what the assured failed to do, but what the insurer on its part did to secure co-operation from an apathetic, inattentive, or vanished policy holder, must be considered. Liability insurance is intended not only to indemnify the assured, but also to protect members of the public who may be injured through negligence. Indeed, such insurance is made mandatory in many states. It would greatly weaken the practical usefulness of policies designed to afford public protection, if it were enough to show mere disappearance of the assured without full proof of proper efforts by the insurer to locate him." (*Pennsylvania Thresher-*

*men & Farmers' Mut. Cas. Ins Co.* v. *Owens* 238 F. 2d 549, 550–551.)

The only testimony regarding the efforts to locate Floyd was given by Clark. When the date of Floyd's pretrial examination was finally fixed, Clark sent Floyd a letter. A few days before the date one of Clark's associates called the telephone number Floyd had left and was informed by a female voice that its possessor had not seen Floyd for weeks. The broker who had arranged for the policy lived in Floyd's building. Clark communicated with her and was told that the above-mentioned letter had been received, that Floyd had moved and that she did not know where he was. Thereafter several letters were addressed to Floyd but were returned with an inscription indicating he had moved. Clark also examined records at the Motor Vehicle Bureau and at the Manhattan Board of Elections and made further inquiries of the broker. Additionally Clark testified that he received a " credit report of an investigation that I had asked to be made by the defendant in this case, Universal, in an endeavor to locate this defendant Frank Floyd, and this report indicated that somebody had personally gone there and he could not be located." A later report of like purport was also made. The " somebody " did not testify and the nature of the investigation is unknown; nor was either report offered at the trial.

Floyd's written statement above mentioned recites that he was then unemployed. The policy gave his occupation as " Truck Driver, Mebrose Garage, 248 East 149th Street, Bronx, New York." No inquiry was made at Mebrose Garage. The statement also indicates that the car had been taken without permission by " Tobe Floyd or Floyd Tobe ", an acquaintance living in the Fremont Street section of The Bronx; that " Tobe Floyd or Floyd Tobe " had been arrested and jailed after the accident; and that the car had been released to Frank Floyd, the insured, after he executed papers at the District Attorney's office. This trail of official records left by Floyd and his acquaintance who had driven off with the car was not examined, and, oddly, no information was ever requested of the police department. One can conjecture as to why no attempt was made to find and interview Floyd's acquaintance. He might have asserted that he had operated the car with Floyd's permission. On the other hand, he might also have known where Floyd was.

It is illuminating to compare defendant's efforts with those of the insurer in *Shalita* v. *American Motorists Ins. Co.* (*supra*), the authority on which defendant principally relies. *Shalita* was decided upon an agreed statement of facts, which shows the

following. The insured, Okeson, notified the insured of the accident, furnished a written statement, and then, before institution of suit, disappeared permanently. His policy stated that he was employed at a hotel in Parksville, Sullivan County. The insurer's investigator journeyed to Parksville and found that Okeson was no longer at the hotel and had abandoned his wife and 18-months-old daughter. The wife was ignorant of his whereabouts. The investigator learned that Okeson had a personal attorney in Parksville. He interviewed the attorney, who thought that Okeson might be employed at the Brooklyn Navy Yard. In addition to writing letters to Okeson, which were returned undelivered, the insurer twice published a notice in two daily newspapers in New York City asking " Oke Okeson or Oko Okoson " to communicate with it. Having ascertained that Okeson had been a seaman, the insurer had various investigators make search for him at 32 marine employment agencies belived to be most likely to have his name listed. It also had a check made of the records of the Motor Vehicle Bureau, the Swedish Consulate, and two finance companies which had previously financed the purchase of automobiles by Okeson. In addition it caused search to be made for him through the Bureau of Missing Persons, New York City, the Brooklyn Navy Yard and various seamen's clubs and waterfront resorts.

By contrast, in the present case Floyd's disappearance remains a largely unexplored mystery and his prior co-operative intent is manifest (cf. *United States Fid. & Guar. Co.* v. *Brandon,* 186 Ark. 311). It has been stated that to amount to a breach of the co-operation clause " the attitude of the assured must be one ' of willful and avowed obstruction ' " (*American Sur. Co.* v. *Diamond,* 1 N Y 2d 594, 599). The burden of proving the breach is placed on defendant by statute (Insurance Law, § 167, subd. 5). True, upon a showing by the insurer of an absence of the insured which remains unexplained despite reasonable efforts to locate the insured, " the burden of going forward with the proof and supplying the data necessary to repel the adverse inference, must rest on the assured " (*Rushing* v. *Commercial Cas. Ins. Co.,* 251 N. Y. 302, 304). In this case, however, defendant has not made any showing that would warrant placing such a burden upon plaintiff. We therefore see no reason for disturbing the trial court's finding on this issue — a conclusion not weakened by the incompetence of certain of Clark's testimony, all of which was received, as we read the record, on the understanding that the court would ultimately consider only such testimony as it believed proper.

Defendant points out that the amount of the judgment exceeds the policy limit. Accordingly, the judgment should to that extent be modified on the law and the facts, and, as so modified, affirmed, with costs to plaintiffs.

BREITEL, VALENTE, McNALLY and NOONAN, JJ., concur.

Judgment, to the extent that it exceeds the policy limit, unanimously modified on the law and on the facts, and, as so modified, affirmed, with costs to respondents.

Settle order on notice.