Coos,
No. 5624.

SUTTON MUTUAL INSURANCE COMPANY

*v.*

NOTRE DAME ARENA, INC.

Argued September 6, 1967.
Decided January 30, 1968.

438

*Bell, Bell & Shortlidge* and *William H. Kennedy* ( *Mr. Kennedy* orally ), for the plaintiff.

*Jean L. Blais* ( by brief and orally ), for the defendant.

LAMPRON, J.   On February 6, 1966 the defendant had rented its arena for a fee of $100 to the Berlin Maroons, a local hockey team, for an afternoon game with the Manchester Black Hawks. The defendant "simply rent[ s ] the facilities of the Arena for the purpose of the game" and has its own manager for the restaurant and furnishes two ice-tenders. The Maroons hire their own ticket sellers as well as police officers to maintain order and supervise what is going on in the arena. The defendant has "nothing to do in which way either of the teams play hockey" and has "no responsibilities in that respect."

Florence Plourde who was a spectator at this game was struck by a puck. As a result of an announcement over the public address system she was treated by Dr. Couture who was present "watching a hockey game." He gave her a preliminary examination on the premises and sent her to a Berlin hospital for X-rays which disclosed a fractured jaw. Dr. Couture was in no way connected with the defendant and never informed "any member of the corporation or any member of the Board of Directors of Notre Dame Arena of this accident on the premises of the arena . . . I don't know who the Board of Directors is."

There is no evidence that Florence Plourde or her husband Joseph, the plaintiffs in the tort actions in question, ever notified the defendant of this accident.

A few days before service of the writs in those actions, which took place on May 25, 1966, an attorney telephoned J. L. Blais,

Esq., secretary of the defendant corporation, to advise him that suit would be brought against the defendant and that service was to be made on him. "No further detailed information was given to me . . . with respect to the nature of the claim, the time of the accident or the identity of the claimants." By letter dated the day after such service of writs on him, Attorney Blais notified plaintiff of these actions and at about the same time also notified the chairman of defendant's board of directors Rev. LeClerc. Mr. Blais' letter was the first notice of this accident received by the plaintiff.

Condition 9 of plaintiff's policy reads as follows: "Notice of Accident. Whenever an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses."

The purpose of such a provision is to give the insurer an opportunity to make a timely investigation of the incident and to prepare an adequate defense on behalf of the insured. 13 Couch on Insurance 2d, *s.* 49:321, *p.* 804; Annot. 18 A.L.R. 2d 443, 451. This is a reasonable and valid stipulation which must be complied with by the insured in order to obligate the insurer to defend and pay under the terms of its policy. *Brown* v. *Security Fire and Indemnity Co.,* 244 F. Supp. 299, 304 ( D. W. D. Va. 1965 ). See *Fitch Company* v. *Insurance Company,* 99 N. H. 1, 3. A material and substantial breach of this provision by the insured destroys its right to claim indemnity under the policy. *Glens Falls &c. Co.* v. *Keliher,* 88 N. H. 253, 258; *American Employers Ins. Co.* v. *Sterling,* 101 N. H. 434; *Lumbermens Casualty Co.* v. *Stamell Constr. Co.,* 105 N. H. 28; 6 Williston, Contracts ( Jaeger *ed.* ) *ss.* 812, 813.

"A policy requirement that notice of the accident be given 'as soon as practicable' is commonly considered to require notice as soon as is reasonably possible" ( *American Employers Ins. Co.* v. *Sterling,* 101 N. H. 434, 437 ), which is generally interpreted to call for notice to be given within a reasonable time in view of all the facts and circumstances of each particular case. *Farmers N. B. of Ephrata* v. *Emp. L. A. Corp.,* 414 Pa. 91,

93; *Hendry* v. *Grange Mutual Casualty Co.,* 372 F. 2d 222, 225 ( 5th Cir. 1967 ); *Cinq-Mars* v. *Travelers Insurance Company,* 218 A. 2d 467, 471 ( R. I. 1966 ); 13 Couch on Insurance 2d, *s.* 49:328, *p.* 807; 8 Appelman, Insurance Law and Practice, *s.* 4734, *p.* 22; 7 Am. Jur. 2d, Automobile Insurance, *s.* 143, *pp.* 470, 471. See *Duggan* v. *Travelers Indemnity Company,* 265 F. Supp. 819, 821 ( D. D. Mass. 1967 ); *Segal* v. *Aetna Casualty & Surety Co.,* 337 Mass. 185, 187, 188.

The timeliness of the notice must be determined in the light of the situation existing both when the accident occurred and when the notice was given. *Young* v. *Travelers Ins. Co.,* 119 F. 2d 877, 880. In deciding whether notice of the accident was given within a reasonable time, the following circumstances, among others, are to be considered: the length of the delay in giving notice, the reasons for it, and the probable effect of the delay on the insurer. 8 Appelman, Insurance Law and Practice, *s.* 4734, *p.* 29. Thus the absence, or extent, of prejudice to the insurer caused by the delay are factors to be considered in determining whether the insured has complied with the policy condition by giving notice within a reasonable time or has committed a substantial breach thereof by failing to give notice as soon as practicable. *Glens Falls &c. Co.* v. *Keliher,* 88 N. H. 253, 261; *Pawtucket Mut. Ins. Co.* v. *Lebrecht,* 104 N. H. 465, 471, 472; *Brown* v. *Security Fire and Indemnity Co.,* 244 F. Supp. 299, 305 ( D. W. D. Va. 1965 ).

The burden is on the insured to prove that notice of the accident was given as soon as practicable as required by the policy condition. *Travelers Ins. Co.* v. *Greenough,* 88 N. H. 391, 393; *Standard &c. Ins. Co.* v. *Gore,* 99 N. H. 277, 280; *American Fidelity Co.* v. *Hotel Poultney,* 118 Vt. 136, 138; *Meierdierck* v. *Miller,* 394 Pa. 484, 486; 13 Couch on Insurance 2d, *s.* 49:330, *p.* 808. "Unless the circumstances are such that no reasonable man could find that notice was given as soon as was reasonably possible, the question of whether the policy requirements as to notice have been met is a question of fact for the Trial Court." *Pawtucket Mut. Ins. Co.* v. *Lebrecht, supra,* 470.

The Trial Court properly found that Father LeClerc, chairman of the board of directors of defendant, J. L. Blais, its secretary,

and Father Cote, its treasurer, were not present at the arena at the time of the accident and had no knowledge whatever concerning the accident until or shortly prior to service of the writs on May 25, 1966.

Dr. Danais was president of the defendant corporation and his principal duty under the by-laws was "to preside at all meetings of the members of the corporation." He testified that he arrived at the arena after the accident had taken place. Somebody told him someone had been hurt. He went upstairs and saw "the lady" and learned she had been hit by a puck and that she had been treated by Dr. Couture. There was nothing "obvious about her appearance . . . . She was sitting on the bench there with a heavy coat, and I didn't see any marks. I did not examine her . . . . She was sitting there, and I just walked away." He did not know she had fractured her jaw until a few days before the hearing in these proceedings.

Since a corporation can act only through its officers, agents and employees, it is necessarily chargeable with the knowledge of its officers and agents acting within the scope of their authority. *Sawyer* v. *Mid-Continent Petroleum Corporation,* 236 F. 2d 518, 520 (10th Cir. 1956); 19 Am. Jur. 2d, Corporations, *s.* 1263, *p.* 669. However a corporation is not affected by the knowledge of an officer who had no duty to act upon or report it. *Allstate Insurance Co.* v. *Culver,* 100 N. H. 16, 20; *Rice* v. *Taylor,* 220 Cal. 629, 637; Restatement (Second), Agency, *s.* 275, *comment* d; 2 Pomeroy, Equity Jurisprudence (5th *ed.*) *s.* 668. The Trial Court properly found that Dr. Danais attended this hockey game not in his capacity as president of the defendant but merely as one of many spectators. The evidence failed to establish a duty on him as president of the defendant corporation to report this accident to anyone. Knowledge which might come to him as a private person and beyond the range of his official duties is not notice to the corporation. *Allstate Insurance Co.* v. *Culver, supra;* 19 Am. Jur. 2d, Corporations, *s.* 1263, *p.* 670.

Father Samson was assistant treasurer of defendant corporation, general manager and supervisor of activities at the arena. He was in New York on the day of the accident and returned to Berlin late that evening. He testified that he first learned "officially" of Mrs. Plourde's injury when he was told of the receipt of a letter

from the insurance company by Father LeClerc. He further testified being under the impression of having heard "vaguely" about the accident but cannot say exactly when or from whom. "Who it was, I don't know, or how badly she got hurt, I don't know." It never "came to my mind" to make an investigation to determine "whether the lady was injured, who her physician was, and who treated her, etc. . . . If I had known of the name of this person and if I had known that this person was hurt, I would have reported to the insurance company. . . . I had nothing to report. I had no information, substantial information" before he was informed that suit had been brought. The evidence did not compel a finding that Father Samson had knowledge of the accident before suit or the duty to pursue and investigate the rumors which he was under the impression of having heard. The Trial Court could properly find him justifiably ignorant of the accident until suit was instituted by the plaintiffs. *Hull* v. *Insurance Company*, 100 N. H. 387, 392. *Cf. American Employers Ins. Co.* v. *Sterling*, 101 N. H. 434; *American Fidelity Co.* v. *Schemel*, 103 N. H. 190; *Employers Liability Corp.* v. *New Hampton School*, 103 N. H. 185.

The Trial Court found "that the defendant corporation, prior to May 26, 1966, had no knowledge or reliable data as to the fact of injury, name of the injured party and/or the existence of a potential claim resulting from the accident of February 6, 1966. The Court further finds that the defendant lacked knowledge of the essential elements of the occurrence of February 6, 1966, until May 25, 1966, or shortly before, when its agent, Mr. Blais, received a call from counsel for the Plourdes. It is further found that this lack of knowledge was not the result of or attributable to any conduct and/or actions of the defendant. On the contrary, the extenuating and surrounding circumstances were such that reasonable excuse existed for the initial delay in notifying the plaintiff until such time as the fact of injury had been disclosed to the defendant by virtue of the above-referred call to its secretary . . . . After receipt of such notice, the defendant notified the plaintiff as soon as practicable ( May 26, 1966 )."

The Trial Court further found that: "Under all the circumstances . . . the defendant reasonably complied with the terms of Condition 9 of the policy construed as a whole . . . . This

notice [of May 26, 1966] was seasonable and the prior delay justifiable under all the circumstances. The intervening delay of approximately three months and twenty days was not, on the state of the record, of such duration so as to prejudice the rights of the plaintiff."

The Trial Court's findings were warranted by the evidence. We cannot say as a matter of law that on the totality of the circumstances duly found by the Trial Court no reasonable man could conclude that notice was given as soon as practicable as required by the policy. *Pawtucket Mut. Ins. Co.* v. *Lebrecht,* 104 N. H. 465. *Cf. American Employers Ins. Co.* v. *Sterling,* 101 N. H. 434; *American Fidelity Co.* v. *Schemel,* 103 N. H. 190.

*Exceptions overruled.*

All concurred.