**ST. PAUL FIRE AND MARINE INSURANCE COMPANY**

**v.**

**William A. PETZOLD, Ruth H. Petzold, Annah P. Norris, and Patricia P. French, d/b/a Lafayette Plaza Shopping Center, Knight Broadcasting of New Hampshire, Inc., Iafolla Construction Co., Inc.**

**Civ. A. No. 2860.**

United States District Court
D. New Hampshire.
April 11, 1969.

Devine, Millimet, McDonough, Stahl & Branch, Shane Devine, Manchester, N. H., for plaintiff.

Sulloway, Hollis, Godfrey & Soden, Lawrence E. Spellman, Concord, N. H., for William A. Petzold, Ruth H. Petzold,

Annah P. Norris & Patricia P. French d/b/a Lafayette Plaza Shopping Center.

Wiggin, Nourie, Sundeen, Nassikas & Pingree, William Orcutt, Manchester, N. H., for Iafolla Constr. Co., Inc.

Shaines, Madrigan & McEachern, Robert A. Shaines, Portsmouth, N. H., for Knight Broadcasting of N. H., Inc.

## OPINION

BOWNES, District Judge.

This is a petition for declaratory judgment in which the plaintiff insurer, the St. Paul Fire and Marine Insurance Company, claims that the defendant insured, Knight Broadcasting of New Hampshire, Inc., violated the notice provision of two policies and is, as a consequence, not entitled to coverage.

On May 3, 1965, the plaintiff issued to the defendant a so-called Multiple Coverage Policy and on May 15, 1965, issued a so-called Umbrella Excess Liability Policy.

The notice provision of the Multiple Coverage Policy provided:

(a) Upon the occurrence of any casualty or event for which coverage is afforded by this Policy, written notice shall be given by or on behalf of the Insured to the Company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the Insured, and reasonably obtainable information respecting the time, place and circumstances of the casualty or event, and the names and addresses of the injured and of available witnesses. If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or process received by him or his representative.

The notice provision of the Umbrella Excess Liability Policy provided:

Whenever the Insured has information from which the Insured may reasonably conclude that an occurrence covered hereunder involves injuries or damage which, in the event that the Insured should be held liable, is likely to involve this Policy, notice shall be given by or on behalf of the Insured to the Company or any of its authorized agents as soon as practicable * * *.

The Court rules that, under the facts of this case, the difference in the wording of the two policies relative to notice has no significance and the policies will be treated as one.

There are two issues:

1. Was notice given "as soon as practicable?"; and

2. If not, was the plaintiff prejudiced by such failure?

New Hampshire, like all jurisdictions, has wrestled with this problem of notice and prejudice for many years. Fortunately, the case of Sutton Mutual Insurance Company v. Notre Dame Arena, 108 N.H. 437, 237 A.2d 676 (1968), is not only one of the most recent cases in this field, but it treats the problem fully and lays down clear guidelines for a trial court to follow: (*Id.* 439–440, 237 A.2d 678)

The purpose of such a provision is to give the insurer an opportunity to make a timely investigation of the incident and to prepare an adequate defense on behalf of the insured. 13 Couch on Insurance 2d, s. 49:321, p. 804; Annot. 18 A.L.R.2d 443, 451. This is a reasonable and valid stipulation which must be complied with by the insured in order to obligate the insurer to defend and pay under the terms of its policy. Brown v. Security Fire and Indemnity Co., 244 F.Supp. 299, 304 (D.W.D.Va. 1965). See Fitch Company v. Continental Insurance Company, 99 N.H. 1, 3, 104 A.2d 511. A material and substantial breach of this provision by the insured destroys its right to claim indemnity under the policy. Glens Falls Indemnity Co. v. Keliher, 88 N.H. 253, 258, 187 A. 473; American Employers Ins. Co. v. Sterling, 101 N.H. 434, 146 A.2d 265;

Lumbermens Mutual Casualty Co. v. Stamell Constr. Co., 105 N.H. 28, 192 A.2d 616; 6 Williston, Contracts (Jaeger ed.) ss. 812, 813.

"A policy requirement that notice of the accident be given 'as soon as practicable' is commonly considered to require notice as soon as is reasonably possible" (American Employers Ins. Co. v. Sterling, 101 N.H. 434, 437, 146 A.2d 265, 267), which is generally interpreted to call for notice to be given within a reasonable time in view of all the facts and circumstances of each particular case. Farmers N. B. of Ephrata v. Emp. L. A. Corp., 414 Pa. 91, 93, 199 A.2d 272; Hendry v. Grange Mutual Casualty Co., 372 F.2d 222, 225 (5th Cir. 1967); Cinq-Mars v. Travelers Insurance Company, 218 A.2d 467, 471 (R.I.1966); 13 Couch on Insurance 2d, s. 49:328, p. 807; 8 Appelman, Insurance Law and Practice, s. 4734, p. 22:7; Am. Jur. 2d, Automobile Insurance, s. 143, pp. 470, 471. See Duggan v. Travelers Indemnity Company, 265 F.Supp. 819, 821 (D.D.Mass.1967); Segal v. Aetna Casualty & Surety Co., 337 Mass. 185, 187, 188, 148 N.E.2d 659.

The timeliness of the notice must be determined in the light of the situation existing both when the accident occurred and when the notice was given. Young v. Travelers Ins. Co., 5 Cir., 119 F.2d 877, 880. In deciding whether notice of the accident was given within a reasonable time, the following circumstances, among others, are to be considered: the length of the delay in giving notice, the reasons for it, and the probable effect of the delay on the insurer. 8 Appelman, Insurance Law and Practice, s. 4734, p. 29. Thus the absence, or extent, of prejudice to the insurer caused by the delay are factors to be considered in determining whether the insured has complied with the policy condition by giving notice within a reasonable time or has committed a substantial breach thereof by failing to give notice as soon as practicable. Glens Falls Indemnity Co. v. Keliher, 88 N.H. 253, 261, 187 A. 473; Pawtucket Mut. Ins. Co. v. Lebrecht, 104 N.H. 465, 471, 472, 190 A.2d 420; Brown v. Security Fire and Indemnity Co., 244 F.Supp. 299, 305 (D.W.D.Va. 1965).

The burden is on the insured to prove that notice of the accident was given as soon as practicable as required by the policy condition. Travelers Ins. Co. v. Greenough, 88 N.H. 391, 393, 190 A. 129, 109 A.L.R. 1096; Standard Accident Ins. Co. v. Gore, 99 N.H. 277, 280, 109 A.2d 566; American Fidelity Co. v. Hotel Poultney, 118 Vt. 136, 138, 102 A.2d 322; Meierdierck v. Miller, 394 Pa. 484, 486, 147 A.2d 406; 13 Couch on Insurance 2d, s. 49:330, p. 808. "Unless the circumstances are such that no reasonable man could find that notice was given as soon as was reasonably possible, the question of whether the policy requirements as to notice have been met is a question of fact for the Trial Court." Pawtucket Mut. Ins. Co. v. Lebrecht, *supra*, 470, 190 A.2d 424.

With these principles as our frame of reference, we now consider the facts.

Between July 27 and August 13, 1965, the Iafolla Construction Company conducted blasting operations on the premises of the defendant pursuant to a contract between Iafolla and the defendant. The defendant's premises are located adjacent to the Lafayette Plaza Shopping Center owned by William A. Petzold and others. Neither the defendant nor Iafolla had any reason to believe that the blasting had caused damages to the Lafayette Plaza Shopping Center until February 5 or 6, 1966, when a letter stating "We are presenting herewith a claim against you for damage done to the Lafayette Plazza Shopping Center building." was received by Radio Station WHEB. Ex. A-1. Station WHEB is owned and operated by the defendant. A second letter clearly setting forth a claim based on the blasting was sent direct to the defendant on March 3, 1966, by registered mail. Ex. A-2. Another registered mail

claim letter was sent on March 3, 1966, to the defendant. Ex. A-3.

Iafolla received a similar series of letters at the same time.

The station manager for the defendant, one Kane, contacted the president of Iafolla and was told by him that Iafolla would handle the matter. Ex. A-4 and A-5. Iafolla, through its president, notified its insurance carrier, Employers Mutual of Wausau, on February 11, 1966, of the claim made on behalf of Lafayette Plaza Shopping Center.

Norman Knight, president of the defendant, learned of the claim in February of 1966, and he immediately referred the matter to corporation counsel in Boston. He did nothing else. Edward LaVine of the Boston law firm of Goulston and Storrs was corporation counsel for the defendant. He was notified by Kane of the claim by a memo in February of 1966.

Mr. LaVine testified in essence as follows: He knew the defendant was insured through the plaintiff for a claim of this sort. He knew that the insurance carrier for the defendant was a different one than the carrier for Iafolla. He understood that, under these circumstances, Iafolla and its carrier did not provide coverage for Knight.

In short, Mr. LaVine, in February of 1966, knew that the owners of the Lafayette Plaza Shopping Center were bringing a claim against the defendant for damage allegedly due to blasting sustained in the summer of 1965, and he was under no misunderstanding as to the insurance coverage.

Yet he did not advise his client to notify the plaintiff of the claim, nor did he notify the plaintiff himself. The reason given was that it was his opinion that the defendant was not liable for any blasting damage and that he assumed that Iafolla and its carrier was assuming full responsibility as to the claim.

On September 22, 1967, more than two years after the blasting operations and at least eighteen months after the de-fendant had been notified of the claim of Lafayette, the claims loss manager for the plaintiff was notified by a telephone call that legal action had been commenced against the defendant. A copy of the complaint instituting legal action was received by the plaintiff on September 25, 1967.

On September 25, 1967, a reservation-of-rights letter was sent to the defendant. This was received on September 26, 1967. Ex. 3. The letter notes that the loss occurred in the summer of 1965, and that first notice of it was received on September 25, 1967, and it clearly states that the plaintiff reserved all of its rights and defenses under its policies of insurance.

After the letter was drafted, the plaintiff turned the case over to one of its adjusters, a Mr. Dunn, for investigation. Dunn limited his investigation to the question of late notice. No attempt was made by him or by anyone else on behalf of the plaintiff to investigate the claim of Lafayette relative to the blasting. On October 30, 1967, Dunn instructed Attorney Devine, counsel retained by the plaintiff for this case, to file a petition for declaratory judgment on the basis of late notice. This was done on March 5, 1968. Attorney Devine had entered an appearance in the main case on behalf of the defendant on September 27, 1967, but, at the same time, wrote Attorney Shaines saying: "If our investigation reveals that there is to be a coverage problem, we will notify you promptly and pursue a petition for declaratory judgment." Ex. 4. On March 5, 1968, Attorney Devine advised Attorney Shaines that he would no longer participate in the defense of the defendant in the main case. At no time prior to this was the defendant or its attorney explicitly notified that the plaintiff would not defend.

The carrier for Iafolla, Employers Mutual of Wausau, made a complete investigation relative to liability. No attempt was made by Employers to determine who the carrier was for the defendant and there was no communication

at all between Employers and the plaintiff. No notice was given to the defendant or the plaintiff of depositions that were taken in the main case. On April 6, 1966, the attorney for Lafayette told an adjuster for Employers that no claim was contemplated against the defendant.

On November 18, 1968, Attorney Shaines advised Attorney Devine by letter that Employers Mutual would make available to the plaintiff the full and complete results of its investigation of the blasting claim. Ex. 6. This offer was rejected.

The claims loss manager and the adjuster for the plaintiff both testified that, due to late notice, the plaintiff could not make a proper investigation and, particularly, would be unable to obtain statements from witnesses and make an accurate appraisal of the damage.

■ Under these facts, the Court finds that the defendant failed to give notice as soon as practicable and rules that this was a material and substantial breach of the insurance contract. The station manager, the president, and corporation counsel for the defendant all knew of the claim in February of 1966. No valid reason has been advanced as to why the plaintiff was not notified of the claim between March of 1966, and September 22, 1967. A delay of eighteen months under these circumstances is prejudice to the insurer almost as a matter of law. The circumstances are such that no reasonable man could find that notice was given as soon as reasonably possible. Proper evaluation and disposition of claims depends upon reasonably prompt investigation. Such investigation was denied to the plaintiff. Nor does an insurer have to rely on the investigation made by another. The plaintiff was within its rights in refusing to accept the offer of Employers Mutual to make available to it the investigation file. This offer was obviously made with the hope, if not the intent, that the plaintiff would be forced to share the burden of any settlement or final judgment with Employers. Ex. D.

■ The Court finds little merit in defendant's position that the plaintiff's failure to investigate the blasting claim and its failure to notify the defendant formally until March 5, 1968, that it would raise the issue of late notice as a defense amounts to an estoppel. There is no evidence that the defendant was prejudiced or harmed in any way by this conduct. Either the defendant was covered or it was not covered by the insurance policy. Nothing that the plaintiff did between September 22, 1967, and March 5, 1968, could change the facts of coverage unless there was either an express or an implied waiver. The Court finds that there was no waiver, either express or implied, and defendant's counsel, in response to a direct question by the Court during the trial, stated that there was no claim of waiver being made.

Furthermore, the reservation-of-rights letter clearly put the defendant on notice that the plaintiff might invoke the notice provisions of the policy. Attorney Devine's letter of September 25, 1967, to Attorney Shaines also made it clear that notice was an issue that the defendant might well have to face.

To hold, under these facts, that the plaintiff has a duty to defend would be to effectively nullify the notice provisions of the policies.

The Court rules as follows:

1. That the coverage of the policies does not apply to Knight Broadcasting of New Hampshire, Inc.;

2. That St. Paul Fire and Marine Insurance Company does not have to assume the defense of the actions brought by William A. Petzold, et al., doing business as Lafayette Plaza Shopping Center against Knight Broadcasting of New Hampshire, Inc.; and

3. That St. Paul Fire and Marine Insurance Company is not required to satisfy any judgments which may be obtained by William A. Petzold, et al., doing business as Lafayette Plaza Shopping Center against Knight Broadcasting of New Hampshire, Inc.

So ordered.