**ST. PAUL FIRE AND MARINE INSUR-
ANCE COMPANY, Plaintiff, Appellee,**

v.

**William A. PETZOLD et al., Defendants.
Knight Broadcasting of New Hampshire,
Inc., Defendant, Appellant.**

**No. 7363.**

United States Court of Appeals
First Circuit.

Nov. 25, 1969.

Robert A. Shaines, Portsmouth, N. H.,
with whom Shaines, Madrigan & Mc-
Eachern, Portsmouth, N. H., was on
brief, for appellant.

Shane Devine, Manchester, N. H., with whom Devine, Millimet, McDonough, Stahl & Branch, Manchester, N. H., was on brief, for St. Paul Fire and Marine Insurance Co., appellee.

Before ALDRICH, Chief Judge, McENTEE, Circuit Judge, MURRAY, District Judge.*

McENTEE, Circuit Judge.

This is an appeal from a declaratory judgment entered on behalf of the plaintiff-insurer, St. Paul Fire and Marine Insurance Company (St. Paul), against the defendant-insured, Knight Broadcasting of New Hampshire, Inc. (Knight); William A. Petzold et al., the owners of a shopping center; and Iafolla Construction Co., Inc. (Iafolla).[1] Only Knight appealed. The sole question before this court is the correctness of the trial court's holding that Knight failed to comply with notice provisions [2] contained in two insurance policies issued by St. Paul and therefore that St. Paul is not responsible for any liability arising from the incident in question.[3]

In May 1965, St. Paul issued the insurance policies in question, which included coverage for damages caused by blasting. Between July 27 and August 13, 1965, Iafolla did certain blasting on Knight's property located adjacent to the Petzold shopping center, Lafayette Plaza.

On February 4, 1966, some six months after the blasting occurred, attorneys for Petzold wrote to the Knight-owned radio station located on the site where the blasting occurred, complaining of damages caused by the blasting. Two more letters followed, both advancing Petzold's claims. Norman Knight, President of Knight Broadcasting, turned them over to his corporate counsel, Edward LaVine of Boston. LaVine advised that the letters be sent to Iafolla. He did not suggest that St. Paul be notified of the claim, despite his knowledge of the policies, because in his view Knight could not be held liable, and he assumed Iafolla would assume responsibility. In this connection the district court found that the president of Iafolla told Knight's manager that Iafolla would handle the matter. A copy of a letter consistent with this was sent to attorney LaVine.

The letters were sent to Iafolla, which had received a similar claim, and Iafolla reported them to Employers Mutual of Wausau, its insurance carrier. Employers undertook an investigation of the claims.

In late September 1967, Petzold brought suit against Knight and Iafolla, alleging damages resulting from the 1965 blasting. On September 22, Knight notified St. Paul of the pending action by telephone and by letter on September 25.

St. Paul made virtually no attempt to investigate the claim and relies exclusively on its policy defense of untimely notice. Indeed, Employers Mutual agreed to make its investigative files available to St. Paul and a formal offer of the files was made by counsel for Knight. St. Paul, however, rejected this offer.

---

* Sitting by designation.

1. Jurisdiction is founded on diversity of citizenship and New Hampshire law controls. Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

2. The notice provision of the Multiple Coverage Policy provided in part: "Upon the occurrence of any casualty or event for which coverage is afforded by this Policy, written notice shall be given by or on behalf of the Insured to the Company * * * as soon as practicable." The notice provision of the Umbrella Excess Liability Policy provided in part:

"Whenever the insured has information from which the Insured may reasonably conclude that an occurrence covered hereunder involves injuries or damage which, in the event that the Insured should be held liable, is likely to involve this Policy, notice shall be given by or on behalf of the Insured to the Company * * * as soon as practicable. *· * *" The trial court ruled that the differences between the notice clauses are of no significance and, as neither party appeals from that ruling, we do not deal with that question.

3. The district court's opinion appears at 299 F.Supp. 50 (D.N.H.1969).

■ Notice "as soon as practicable" under New Hampshire law means notice within a reasonable time, given the facts and circumstances of the case. Sutton Mutual Insurance Co. v. Notre Dame Arena, Inc., 108 N.H. 437, 237 A.2d 676 (1968). There the Court said:

"In deciding whether notice of the accident was given within a reasonable time, the following circumstances, among others, are to be considered: the length of the delay in giving notice, the reasons for it, and the probable effect of the delay on the insurer. * * * Thus the absence, or extent, of prejudice to the insurer caused by the delay are factors to be considered in determining whether the insured has complied with the policy condition by giving notice within a reasonable time * * *." 108 N.H. at 440, 237 A.2d at 678–679 (citations omitted).

In applying this test, the district court held that the insured had failed to give notice within a reasonable time. The decision rested on two grounds. First, the court found no valid reason for the failure to give notice between February 1966 and September 1967. Second, it held that St. Paul was under no obligation to accept the Employers Mutual file and consequently was prejudiced by the delay. We disagree.

■ The reason for Knight's failure to notify St. Paul was counsel's conclusion that Knight could not be held liable for any blasting damage. This view was based on the fact that all the blasting had been carried out by Iafolla. In essence, Knight's position is that a reasonable good faith belief that the insured cannot, as a matter of law, be held liable excuses late notice, at least where the insurer is not prejudiced by the delay.

Support for this view is found in the decision of the New Hampshire Supreme Court holding that a farmer-insured's reasonable belief that an accident in which he had been involved could not result in liability to his insurer justified a delay in notification. Farm Bureau Mutual Automobile Insurance Co. v. Manson, 94 N.H. 389, 54 A.2d 580 (1947). While that is not precisely the situation in this case, first, because the belief of non-liability was reached here not only by a layman-insured but by his attorney, and, second, because the law requires of attorneys a higher standard of care in marshalling the relevant factors of liability and evaluating them, the facts known to the insured's counsel and those otherwise discoverable by him support a reasonable belief that St. Paul could not be liable.

■ This does not, however, dispose of the case. The existence of an excuse for the delay is but one of the factors to be considered in determining whether the insured notified the insurer in a reasonable time. Sutton Mutual Insurance Co. v. Notre Dame Arena, Inc., supra; see Abington Mutual Fire Insurance Co. v. Drew, 109 N.H. 464, 254 A.2d 829 (1969). We therefore pass to the question of prejudice.

■ The purpose of a notice provision in an insurance contract is to enable the insurer to make a prompt investigation of the incident and to prepare an adequate defense to a claim. Sutton Mutual Insurance Co. v. Notre Dame Arena, Inc., supra; Annot., 18 A.L.R.2d 443, 451 (1951). Hence, in determining whether the plaintiff was prejudiced by the delay, we must consider the extent to which that purpose is defeated.[4]

■ We begin with the trial court's holding that the insurer was not bound to accept the offer of Employers' investigative file. The answer is not that simple. These are not parties dealing at arms' length. Plaintiff, for a consideration, entered into a relationship. We think that it does not lie in the mouth

---

4. We do not reach the question of where the burden of proof lies on the issue of prejudice. Despite its contention that it is on the insurer, Knight assumed the burden at trial and, as appears below, in our view established that St. Paul suffered no prejudice as a result of the delay.

of an insurer to claim it has been prejudiced when it has refused another investigator's file without so much as inspecting it. The file may be fully as complete as one which the insurer, given the opportunity, could have compiled itself. Hence, the insurer cannot rely on its inability to investigate a claim as evidence of prejudice unless the proffered report is materially beneath the quality it could itself have developed had it been timely notified. *See* Consolidated Mutual Insurance Co. v. Radio Foods Corp., 108 N.H. 494, 501, 240 A.2d 47, 51 (1968).

Here the insured undertook to show that the file was comprehensive and that the insurer could not have added anything by its own investigation. St. Paul's claims loss manager was called by Knight and testified that his only criticism of the file was that he "would have certainly gone further in obtaining information from witnesses." When pursued, however, he admitted that once as much as six months had passed, witnesses' memories dim and the information he had in mind could not have been obtained. Here six months had passed before there was any hint of damage or a claim and therefore even immediate notice upon receipt of the Petzold letter would probably not have enabled St. Paul to compile a better file than the one offered to it. Under these circumstances, the only conclusion open on the record, having in mind the duty imposed upon the insurer because of the parties' relationship, is that the insurer was unreasonable as a matter of law, given the protection of a non-waiver stipulation, which, in fact, plaintiff did send to the defendant, in not accepting and examining the proffered file. There had been no default as a matter of law by the defendant.

When the insurer refused to pursue its obligations it committed a material breach of its own obligations. It is not the plaintiff, but the defendant that is entitled to judgment.

Reversed and remanded for the entry of judgment for the defendant.